**SCHREIBER v. JACOBS et al.**

**Civ. A. No. 12079.**

United States District Court
E. D. Michigan, S. D.

Dec. 29, 1953.

Fischer, Brown, Sprague, Franklin & Ford, Detroit, Mich., Leonard I. Schreiber, of Pomerantz, Levy, Schreiber & Houdek, New York City, for plaintiff.

George Fitzgerald, Detroit, Mich., for Rex Jacobs and J. F. Inc.

Clark, Klein, Brucker & Waples, Detroit, Mich., for A. R. Jacobs, and others.

Warner, Norcross & Judd, Grand Rapids, Mich., for Vanden Bosch and Watters.

Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., for F. L. Jacobs Co. (Goddard, McClintock, Fulton & Donovan, Detroit, Mich., of counsel), for defendants.

THORNTON, District Judge.

This is a stockholders' derivative action, the plaintiff being a citizen of the state of New York, J. F. Inc. and F. L. Jacobs Co. being Michigan corporations, and each individual defendant also being a citizen of the state of Michigan, the matter in controversy exceeding three thousand dollars, and the plaintiff further alleging that this action is not brought collusively to confer upon this Court jurisdiction which it would not otherwise have.

It is further alleged that the plaintiff is, and at all times since March 1950 has been, the owner and holder of 100 shares of the common stock of the F. L. Jacobs Co. and that he brings this action in the right and for the benefit of the Company, and further alleges, upon information and belief, that since its organization the Company has been dominated and controlled by members of the Jacobs family, the present heads of which are the brothers, Rex Closser Jacobs and Clare Stephen Jacobs; that, directly or indirectly, through members of their family and trusts for their benefit, since prior to 1945 Rex Closser Jacobs and Clare Stephen Jacobs have owned and held approximately twenty per cent of the outstanding stock of the Company, and through this stock ownership the Jacobs family did select, nominate and elect persons of their own choosing as directors and executive officers of the Company, and that these directors, so chosen, would act subserviently to and in the interests of the Jacobs family and, because of this fact, the Jacobs family dominated and controlled the Company throughout the aforesaid period, and determined and directed its business policies and affairs. Because of such domination and control, the officers and directors of the Company failed and neglected to exercise individual judgment in the performance of their official duties, and deliberately aided and abetted the private interests of the Jacobs family in violation of their fiduciary duties to the Company, and contrary to its interests.

It is further alleged that the Company engages principally in the manufacture of automotive parts and accessories, used chiefly as original automotive equipment, its only non-automotive product being bottle-vending machines; and that, further, in the past five or more years, the Company has built up and trained a sales organization capable of handling the sale of its products. The consolidated net sales of the Company for its fiscal years increased from $10,676,256 in 1946 to $30,430,980 in 1950 and $33,337,103 in 1951, this being the most recent year for which data was available to the plaintiff.

Further, on information and belief, it is alleged that because of the restricted nature of the Company's products and, more particularly, because of the limited number of its customers, the Company's

sales force has been small in number and its expenditures for the maintenance thereof have been comparatively minor. In May 1952 all the then directors of the Company, each of whom had full knowledge of the facts, allegedly entered into a conspiracy with Rex Closser Jacobs to mulct the Company in the following described manner and in furtherance of the alleged conspiracy:

"(a) Upon information and belief, early in June 1952, certain members of the Jacobs Family organized defendant J. F. Inc. to engage in business as a general manufacturers' sales agency.

"(b) Since its organization, the president of J. F. Inc. has been Rex Closser Jacobs.

"(c) Upon information and belief, the stock of J. F. is owned by Rex Closser Jacobs and/or others of the Jacobs Family."

The plaintiff further contends that on June 20, 1952, Rex Closser Jacobs resigned as president of the Company and was succeeded by his brother, Clare Stephen Jacobs, and that on the same day the Company was caused by the Jacobs family to enter into an agreement with F. J. Inc., pursuant to which:

"(a) F. J. Inc. became the exclusive sales agent for the Company;

"(b) J. F. Inc. took over the principal sales personnel of the Company; and

"(c) The Company agreed to pay J. F. Inc. a commission upon the net sales of the Company calculated to yield J. F. Inc. a stupendous and an assured profit."

The plaintiff further claims that this agreement between the Company and J. F. Inc. was and is illegal, improvident and a waste of the assets of the Company, designed solely to enrich J. F. Inc. and its stockholders who are members of the Jacobs family at the expense of the Company, for the reasons that:

"(a) There is no valid business reason for discontinuing the Company's historic policy of making its sales division an integral part of the Company's business;

"(b) By disbanding and transferring its sales organization to J. F. Inc. the Company renders its continued success and indeed its continued existence dependent upon the whim and control of J. F. Inc.;

"(c) The huge expenditures heretofore made by the Company in building up its sales and its sales organization are thereby lost to the Company, and the benefits thereof are transferred to J. F. Inc.; and

"(d) The amounts provided to be paid by the Company to J. F. Inc. for its ostensible services are exorbitant, and bear no reasonable relationship to the Company's past expenses for the maintenance and operation of its sales organization."

The plaintiff seeks the following relief:

"(a) Enjoining defendants, pendente lite and permanently, from consummating the agreement of June 20, 1952 between J. F. Inc. and the Company;

"(b) Enjoining the individual defendants and the Company, pendente lite and permanently, from causing the Company to make any payments to J. F. Inc. pursuant to the agreement of June 20, 1952 between J. F. Inc. and the Company;

"(c) Setting aside and declaring null and void the agreement of June 20, 1952 between J. F. Inc. and the Company;

"(d) Requiring J. F. Inc. and the individual defendants herein jointly and severally to account to the Company for their respective profits and for the Company's losses by reason of the acts and transactions herein alleged;

"(e) Awarding plaintiff the costs and expenses of this action, including reasonable counsel fees; and

"(f) Granting plaintiff such other and further relief as may be just."

Plaintiff filed his complaint in this district on August 25, 1952, and in the amended answer of the F. L. Jacobs Co., there is set forth the following:

"Answering paragraph 13, defendant is informed and does believe that the plaintiff could not have, at the time this action was commenced, secured redress from the then Board of Directors of the Company, as it was at that time subject to the dominance and control of the Jacobs family, and hostile and antagonistic to the claims herein made by the plaintiff. Subsequent to the commencement of this action, i. e., on or about December 15, 1952, the Management and Board of Directors of the Company were reorganized pursuant to the overwhelming vote of the stockholders and, as a result, the Jacobs family and its nominees were removed from control of the Company."

The Company concludes its said amended answer with the following:

"Wherefore, defendant F. L. Jacobs Co. joins in the plaintiff's prayer for judgment:

"(a) That the defendants be enjoined pendente lite, from consummating the agreement of June 20, 1952, between J. F. Inc. and the Company;

"(b) That the individual defendants and the Company be enjoined pendente lite and permanently from causing the Company to make any payments to J. F. Inc. pursuant to the agreement of June 20, 1952, between J. F. Inc. and the Company;

"(c) That said agreement of June 20, 1952, between J. F. Inc. and the Company be set aside and declared null and void;

"(d) That J. F. Inc. and the individual defendants herein jointly and severally be required to account to the Company for all payments made to J. F. Inc. on account of said contract from the date of the contract to the date of entry of any decree in this case;

"(e) That the Court grant plaintiff such other and further relief as may be just."

The defendants, Clare Stephen Jacobs, Fred L. Jacobs, John F. Jacobs and Alvin R. Jacobs moved to dismiss the within proceedings or, in the alternative, to stay these proceedings, contending that:

"1. Plaintiff did not comply with Rule 23(b) of the Rules of Civil Procedure;

"2. Plaintiff is not the real party in interest under Rule 17 of the Rules of Civil Procedure;

"3. The same issues involved herein and the same parties are before the Circuit Court of Wayne County, Michigan, in actions which are now there pending and at issue.

"This Motion is based upon the pleadings and files in this cause, including the affidavit of Theodore Souris, associate counsel for F. L. Jacobs Co., heretofore filed in this cause on, to-wit: September 8, 1953, and also upon the affidavit of Wilber M. Brucker, attached hereto."

A motion has been submitted by the defendants Rex Closser Jacobs and J. F. Inc. setting forth substantially the same reasons as contained in the foregoing motion, and a motion to dismiss or to stay proceedings has also been submitted by the defendant F. L. Jacobs Co. grounded upon the following reasons:

"1. Diversity of citizenship no longer exists, defendant corporation by its amended Answer having realigned itself with plaintiff.

"2. Defendant corporation is the real party in interest as between itself and the plaintiff and should be permitted to control the litigation.

"3. The same issues involved herein and the same parties are before the Circuit Court of Wayne County in actions now pending."

And in support of this motion there is an attached affidavit from Theodore Souris, associate counsel for the defendant F. L. Jacobs Co. similar to the affidavit attached to the motion of Clare Stephens Jacobs, Fred L. Jacobs, John F. Jacobs and Alvin R. Jacobs.

The affidavit of Theodore Souris reads in part as follows:

"1. On February 27, 1953, a suit was commenced against the F. L. Jacobs Co., being No. 271–792 in the Circuit Court for the County of Wayne by J. F. Inc. for breach of a certain exclusive sales agency agreement between the parties thereto, the validity of which exclusive sales agreement is in issue in the above captioned matter; that on September 8, 1953, an answer, set off and recoupment was filed in said Circuit Court action whereby the F. L. Jacobs Co. denies the validity of said contract and seeks recovery by way of set off or recoupment from J. F. Inc. of all sums heretofore paid by the F. L. Jacobs Co. to J. F. Inc. under said contract; said cause is now at issue and ready for trial.

"2. On or about April 9, 1953, the F. L. Jacobs Co. filed a suit, being No. 502–611 in the Circuit Court for the County of Wayne in chancery against all of the individual defendants named in the above captioned matter seeking, among other things, to recover from said individual defendants, all of whom were directors of the F. L. Jacobs Co. at the time of the execution of the alleged exclusive sales agency agreement, damages incurred by the F. L. Jacobs Co. as a result of the execution of the alleged sales contract; that all of said individual defendants herein, who are also defendants in said Circuit Court action, have appeared and have answered or have been defaulted and said cause is now at issue and ready for trial."

The motion of defendant F. L. Jacobs Co. to dismiss or to stay proceedings was withdrawn and said defendant, at the time of the hearing of plaintiff's motion to advance the within cause for an early trial, orally joined with said plaintiff in his motion. Such a situation is persuasive that the interests of the plaintiff Schreiber and of the corporate defendant F. L. Jacobs Co. are united in objective.

In this motion to advance we also find the following:

"Since this case was filed suit has been brought and is pending undetermined in the Circuit Court for the County of Wayne, in Chancery, between certain other stockholders and the defendant F. L. Jacobs Company in which a receivership of said company is sought."

A hearing was had on the aforementioned motions, and briefs have been submitted by the respective parties.

▌ This Court is not in possession of any competent knowledge of what brought into play the action of the stockholders in reorganizing the management and board of directors of the F. L. Jacobs Co. and the resulting removal of the Jacobs family and its nominees from control of the Company, or when this action first took root. Therefore, we cannot appraise the sincerity of the plaintiff's allegation as to the futility of making demands on the stockholders of this Company for action; and, since the complaint conforms with the provisions of Rule 23(b) of the Federal Rules of Civil Procedure, 28 U. S.C.A., the jurisdiction of this Court was properly invoked and, accordingly, the motions to dismiss are denied.

Upon consideration of the motions to stay these proceedings, we are confronted with the following:

▌ Inasmuch as the defendant F. L. Jacobs Co., by its amended answer, has voluntarily realigned itself with the plaintiff, the antagonism of those in control of the corporate defendant has been removed, and the rationale upon

which the stockholders' derivative action is predicated becomes no longer applicable. In its place is an action where the real party in interest is a Michigan corporation; the defendant J. F. Inc. is a Michigan corporation, and the officers and directors named in the action are citizens of the state of Michigan. The affidavit of Theodore Souris, as associate counsel for the defendant F. L. Jacobs Co., the pertinent contents of which are set forth above, discloses that litigation is now pending in the Circuit Court for the County of Wayne, one of the courts of the state of Michigan. The history of the litigation pending in the state court reveals the fact that four weeks after the F. L. Jacobs Co. voluntarily realigned itself with the plaintiff in the action pending in this court, it commenced its action in the state court, indicating a desire on the part of this defendant to have the state court adjudicate matters pertaining to its internal affairs. This state court action, when consolidated with the action of J. F. Inc. against the F. L. Jacobs Co., with set-off and recoupment also present and pending in the same action, comprehends the total subject matter as to which relief is prayed for in the action pending in this court, all of which was at issue and ready for trial in state court as of September 8, 1953. Included in the state action are all of the defendants named in the within action. In addition to the foregoing, there is also pending in the same state court a proceeding wherein certain stockholders of the F. L. Jacobs Co. are seeking the appointment of a receiver for that company.

"* * * It has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state." Com. of Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 385, 79 L.Ed. 841.

On August 25, 1952, plaintiff filed the bill of complaint herein in which he states that:

"(a) Under Michigan law the management of the Company rests in its board of directors. The stockholders cannot compel its directors to sue;

"(b) Approximately 20% of the outstanding shares of the Company's common stock (its sole voting stock) is owned by the Jacobs Family. The remaining shares, held by approximately 3,000 stockholders, scattered throughout the United States, are listed and actively traded on the New York Stock Exchange and are also traded on the Detroit Stock Exchange. Many shares of stock change hands nearly every day. In a proxy fight the management of the Company would use corporate funds and facilities. To an outside stockholder, the costs of such a proxy fight would be prohibitive. Para. 14, Bill of Complaint.

And from the amended answer of the F. L. Jacobs Co. we learn that:

"* * * Subsequent to the commencement of this action, i. e., on or about December 15, 1952, the Management and Board of Directors of the Company were reorganized pursuant to the overwhelming vote of the stockholders and, as a result, the Jacobs family and its nominees were removed from control of the Company."

While conjecture does not provide a substantial foundation for building an inference, yet, in the field of equity it is not improper to take cognizance of the circumstances and background in relation to a situation such as this. We have an allegation that it was a hopeless task to induce this corporation to clean its own house and yet in a matter of sixteen weeks time there was action taken by the stockholders. The inference may fairly be drawn that rumors of intended action reached the ears of the plaintiff herein prior to his filing his

bill of complaint. This inference is strengthened when considered in the light of the magnitude of the reorganization of a corporation whose net sales increased from $10,676,256 in 1946 to $33,337,103 in 1951 and makes questionable at least the good faith of the plaintiff's allegation of futility.

■ Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 522–523, 67 S.Ct. 828, 831, 91 L.Ed. 1067, describes a stockholder's derivative action as:

> "The cause of action which such a plaintiff brings before the court is not his own but the corporation's. It is the real party in interest and he is allowed to act in protection of its interest somewhat as a 'next friend' might do for an individual, because it is disabled from protecting itself."

■ With the foregoing definition of a derivative action in mind, the following colloquy between the Court and the plaintiff, acting as counsel for himself, is significant, bearing in mind that said colloquy took place at a time when the corporation had already demonstrated its ability to protect itself:

> "The Court: What are you looking for that the corporation can't get?

> "Mr. Schreiber: The corporation has no right to take over this suit. As a matter of practicality it concedes it has none. The case cited by Mr. Brucker, General Investment Company against—

> "The Court (interposing): Why should you object to the corporation taking it over?

> "Mr. Schreiber: Because this case has been prepared by me.

> "The Court: I know, but you are preparing it for the purpose of assisting the corporation.

> "Mr. Schreiber: That is right, sir.

> "The Court: So now the corporation, standing on its own feet, is proceeding in an orderly way with the lawsuit, asking for the same relief you are asking for the corporation, and I can't see why you are objecting.

> "Mr. Schreiber: Because, your Honor, if I may be permitted, I have a right to continue this suit. I have a duty to continue this suit. And, I have not an obligation to stand in the background because there is someone else who wishes to take it over. I have not that obligation, your Honor.

> "The Court: I am not talking about an obligation, Mr. Schreiber. I am just wondering, since the corporation has taken what you naturally admit is proper action, why don't you drop out of the parade, then, since they are going along all right?

> "Mr. Schreiber: Well, your Honor, let us be very frank. I mean, there is no great secret about this. Mr. Brucker seemed to obfuscate the issue with a great conspiracy in the background. I have devoted my sweat and toil to this litigation. I have accomplished things by getting things done. I would like to see that brought to fruition so that I can, at the proper time, claim proper compensation for what I have done.

> "There is nothing horrendous to this. I don't hide it from the Court or Mr. Brucker. When this case is finished—and I trust successfully finished—I will ask the Court to fix my compensation and compensation for my brethren for work we have done. This is no secret, or no wrong in it. I assume Mr. Brucker is here, too, under a retainer from his client.

> "The Court: You are here as plaintiff.

> "Mr. Schreiber: That is right, and I am here as an attorney pro se, representing myself, and I think that is a proper proceeding."

Without questioning the propriety of attorney's fees under proper circumstances, it is apparent from the foregoing that the plaintiff has taken the position that this action is his rather than the corporation's, and that he is acting as "next friend" to protect his own interest rather than the interest of the corporation.

Because of the exceptional circumstances which are here present, it is our opinion that the ends of justice will be best served by staying these proceedings until the further order of this Court or the termination of the litigation now pending in the state court, which involves all of the issues and all of the parties present in the instant action, and which has been ready for trial since September 8, 1953. This necessarily disposes of the motion to advance.

Orders may be submitted in accordance with the foregoing.