G. E. LOONEY, by Harold Looney, his guardian, Plaintiff in Error,

v.

Gladys CHASTAIN, Defendant in Error.

No. 40407.

Supreme Court of Oklahoma.

Sept. 22, 1964.

Fred W. Woodson, George O. Kleier, Tulsa, for plaintiff in error.

Hudson, Hudson, Wheaton, Kyle & Brett, Tulsa, Margaret Lamm, Tulsa, on the brief, for defendant in error.

BERRY, Justice.

The plaintiff was declared legally incompetent on December 6, 1960, and the plaintiff's son was appointed guardian. On March 7, 1961, this action was brought by the guardian asking the district court to (1) vacate an order theretofore entered wherein defendant had secured a decree of divorce, insofar as same pertained to division of the plaintiff's property; (2) cancel certain deeds and assignments executed by plaintiff, and for a decree adjudging plaintiff to be the owner of the described property; (3) grant plaintiff judgment for substantial sums of money which had been set over to defendant as a result of coercion and undue influence exercised upon plaintiff while he was incompetent and of unsound mind.

Defendant's answer asserted a plea of laches and denied generally the allegations of the petition. Defendant affirmatively alleged the guardian was the real party in interest and had brought this action without authority; that the matters sought to be litigated were res judicata, having been the subject of a prior action wherein a demurrer had been sustained and judgment rendered against the guardian.

Plaintiff's case was based upon our statute, 12 O.S.1961 § 1031, Subdivisions 4 and 5. This statute grants a trial court power to modify or vacate its judgment at or after term at which entered, by reason of fraud practiced in obtaining such judgment or by reason of erroneous proceedings against an infant or person of unsound mind where the defendant's condition does not appear in the record, nor the error in the proceedings. The trial judge who approved the property settlement, agreed upon by plaintiff and defendant, and granted the divorce also was the trial judge in the present case. The matter was heard August 17, 1961, and held under advisement for more than a year before judgment was rendered finding that none of the allegations of the petition were sustained by the evidence.

In seeking reversal of the judgment plaintiff urges the trial court erred in rendering judgment for defendant for the reason such judgment is clearly against the weight of the evidence. It is asserted that at all times involved plaintiff was of unsound mind and the property which defendant secured by conveyance, assignment and transfer was obtained as the result of fraud, coercion and undue influence. Plaintiff therefore concludes that under such circumstances

equity will examine into the transactions and deny to a grantee who stood in a relation of trust and confidence any advantage thus gained. Since the argument advanced on appeal is based entirely upon the trial court's findings relative to the weight of the evidence, a careful review of the evidence is required. The following factual summation sufficiently discloses the evidentiary basis of the judgment herein considered.

Plaintiff, 83 years of age at the time of trial, had been a successful business man engaged in operation of a heavy sheet metal and air-conditioning business in Tulsa, Oklahoma. Over the years his wife had been a dominant influence in the family and also in the business. Following her death in April, 1958, the plaintiff seemed completely lost and his ability to function in the customary manner, comprehend ordinary matters, and exercise sound business judgment deteriorated quite noticeably. His failing condition was manifested by offensive conduct toward customers, lack of interest in the company affairs and affirmative efforts to sell the business.

Plaintiff left the firm in August, 1958, selling his interest to his son and grandsons, and also selling his interest in certain equipment to them for $17,000.00, evidenced by a promissory note. This obligation was paid off in September, 1959, but plaintiff thereafter inquired about the indebtedness and could not recall what he had done with the money. Plaintiff had an income from business property of approximately $1100.00 per month and also received $125.00 weekly salary. In March, 1959, his worth was approximately $150,000.00, but three months later he was worth only $70,000.00, although plaintiff had given some money from time to time to his two daughters. Plaintiff expressed his intention to marry defendant and was prevailed upon to enter into an antenuptial agreement, and such contract was executed between plaintiff and defendant with the advice and assistance of certain attorneys, on March 4, 1959. The parties were legally married March 6, 1959, in another state.

This agreement, executed in contemplation of marriage, provided that before the marriage was consummated the parties' rights were to be defined by contract. Plaintiff was to complete purchase of a home for which he had signed a purchase contract agreeing to pay $31,500.00, with title to be taken in joint tenancy. Each party agreed to renounce any claim upon the other's testate estate. If plaintiff predeceased defendant then she was to receive from his estate the property held in joint tenancy, the balance in a joint bank account in a named bank as a widow's allowance. The agreement required plaintiff to open such bank account and "build up this account" from his income from salary and income properties although all expenses were payable therefrom. Defendant also was to receive any automobile owned by plaintiff at his demise and was to retain funds derived from sale of her own residence as her separate property.

In May, 1959, plaintiff advised his son, the present guardian, of having assigned to defendant $10,000.00 of a $21,000.00 promissory note due from the sale of his former residence, and that this had been done to placate defendant and keep her from seeking a divorce. Plaintiff also had changed two life insurance policies at defendant's insistence making her the beneficiary. On June 4, 1959, plaintiff executed a trust agreement setting over the remainder of his property into such trust for his own protection, use and benefit, to be administered by his son as trustee. That same day, upon learning of the establishment of the trust, defendant filed suit for divorce. A waiver of service of summons was procured from plaintiff and the trial court waived the applicable court rule in view of an existing emergency. The matter was heard and a decree of divorce was entered on June 4, 1959, which incorporated provisions of the antenuptial agreement relative to division of property.

In the case before us for consideration the testimony upon which the trial court's judgment was based was elicited from plaintiff's son, the guardian, four of his friends and business acquaintances, and a clinical psychologist who examined plaintiff prior to trial. All of such testimony was based upon personal knowledge and contact of the witnesses with plaintiff, extending over a period of time prior to 1958 through the date of the divorce decree, and was sufficient to demonstrate that plaintiff had failed mentally and emotionally following his first wife's death.

Opposed to the foregoing evidence, the plaintiff's own testimony reflected that he knew and understood the nature and meaning of the antenuptial contract and the deeds and gifts which he had made. Additionally, it is noteworthy that prior to the divorce proceeding everyone seemingly recognized plaintiff's ability to function in a normal and business-like manner was deteriorating and his judgment was bad. However, during all of such period people continued to deal with and treat plaintiff as entirely competent. The antenuptial contract was executed with assistance and advice of counsel, plaintiff was present in court during the divorce proceedings, and his competency, even as to testimony given during trial of the present action, was not put in issue.

■ Under plaintiff's first argument it is asserted that at all times herein concerned plaintiff was of unsound mind. It is urged the rule is that a person is mentally incompetent where by reason of illness, infirmity, or old age he is unable to take care of his property and affairs without assistance, and therefore is more likely to be deceived by designing persons. See In Re Carney's Guardianship, 110 Okl. 165, 237 P. 111. Propriety of the rule asserted is not open to question. However, plaintiff's position is bottomed upon the interpretation placed upon the evidence which is contrary to the trial court's finding.

■■ The second subdivision of plaintiff's argument is that the transfer of money and property from plaintiff over to defendant resulted from fraud and undue influence practiced upon plaintiff. It is asserted that the fraud referred to in Subdivision 4 of the statute, supra, is directed toward fraud outside the record by means of which the trial court is imposed upon and the complaining party was prevented from securing a fair trial. This rule is expressed in Lewis v. Couch, 194 Okl. 632, 154 P.2d 51. And, where one occupying a confidential relationship to another succeeds in securing an undue advantage over another equity will scrutinize such transaction, and in absence of convincing proof of the utmost good faith in such transactions, will grant relief by vacating same. See Owens v. Musselman et al., 190 Okl. 199, 121 P.2d 998, and Bergman v. Smalley, 205 Okl. 313, 237 P.2d 881.

■ As proper statements of the law, plaintiff's argument and supporting authorities are beyond question. However, plaintiff's argument is not persuasive herein. As noted by defendant, certain authorities relied upon by plaintiff involved setting aside conveyances executed by mentally-incompetent persons. This issue is not of concern in the present appeal. The evidence relative to the conveyances, the gifts by plaintiff and the divorce proceedings have been noted. These matters were considered by the trial court in determination of the divorce and were settled by the trial court in the division and property settlement encompassed within the divorce decree. Careful consideration of this record precludes the conclusion that the divorce decree entered in this case was the result of extraneous fraud which prevented plaintiff from having his interests properly considered and protected.

■ As stated above, plaintiff's appeal is based upon the interpretation placed upon the evidence herein. This is an equity case. In such cases this Court considers

and weighs the evidence but does not reverse the judgment entered unless same is clearly against the weight thereof. No reason appears for interfering with the trial court's findings herein.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, WILLIAMS, JACKSON and IRWIN, JJ., concur.