Richard WALDEN, Plaintiff,

v.

H. K. ELROD et al., Defendants.

Richard WALDEN, Plaintiff,

v.

H. K. ELROD and ASSOCIATES, and T. E. L. Oil and Gas Corporation, Defendants.

Richard WALDEN, Plaintiff,

v.

H. K. ELROD et al., Defendants.

Civ. Nos. 74–305–D to 74–307–D.

United States District Court, W. D. Oklahoma.

Jan. 12, 1976.

(On Motions to Dismiss Aug. 9, 1974).

Charles R. Ogden, Guymon, Okl., Jim W. Lee, Oklahoma City, Okl., for plaintiff.

Frank E. Hensley, Guymon, Okl., for Elrods, Long, and Elrod and Associates.

David K. Petty, Guymon, Okl., for T.E.L. Oil and Gas Corporation, H. D. Hitch, Jr., and Guymon Crestview, Inc.

## ORDER

DAUGHERTY, Chief Judge.

The three consolidated cases above captioned are stockholder's derivative actions involving two corporations T.E.L. Oil and Gas Corporation (T.E.L.); and Guymon Crestview, Inc. (Crestview). Plaintiff as a minority stockholder in each corporation alleges in each case that corporate assets were disposed of improperly by the corporations due to acts of the individual Defendants. Two of the cases relate to disposal of assets of T.E.L. and the third relates to disposal of Crestview property. The cases were filed March 22, 1974. They came on for trial before the Court on April 17, 1975 and after a two day hearing were continued to September 9, 1975 at which time another two days of trial were conducted. At the close of the September hearing the cases were submitted to the Court for decision.

Roberta Edwards on December 30, 1975 filed a Motion to Intervene as a Plaintiff in all three cases. Said Motions are made pursuant to Rule 24(a), Federal Rules of Civil Procedure. She contends such intervention is necessary for two reasons: (1) that her interest in the subject matter of the instant actions is such that disposition of same may as a practical matter affect her ability to protect said interest and (2) that she is not adequately represented by Plaintiff. In this regard, Applicant urges that she claims an interest in Plaintiff's stock in the two corporations and in fact is currently involved in a State Court lawsuit in which she claims ownership of the stock in question adverse to the ownership of Plaintiff herein. In Applicant's proposed Complaint in Intervention she would allege that Plaintiff agreed to sell his stock in the two corporations to her on November 5, 1971 at which time he endorsed the stock certificates in blank and delivered same to Applicant. She further would allege that

Plaintiff remained the owner of record during all relevant periods. The relief sought in the proposed Complaint in Intervention includes a request the purported corporate assets be returned to the corporations by Defendants or in the alternative that Defendants be required to pay to the minority shareholder the proper proportionate share of the fair market value of the assets transferred. This relief is the same or similar to that sought by Plaintiff in the instant cases. Applicant would ask for additional relief against Plaintiff in the form of an accounting for dividends and other consideration received from the corporations in question after the purported stock sale to Applicant.

This Court is familiar with the fact that Applicant Edwards has had an interest of some nature in Plaintiff's stock in the two corporations. Defendants in the actions have twice filed Motions or Applications that she be made an additional party Plaintiff to these actions. Said Motions or Applications were denied pursuant to this Court's Orders of January 16, 1975 and January 9, 1976. The Pretrial Conference Order filed herein on March 13, 1975 provided that Defendants were not precluded from showing at the trial that Plaintiff herein was not the owner of the stock in question on the dates of the transfers complained of if such proof is available. No such proof was offered during the trial of these cases. Ample opportunity was afforded Defendants to develop and offer such proof.

Rule 24(a), *supra*, provides:

"*Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

**10**

The instant Motions are based on subsection (2) above. Applicant appears to have made a showing that she claims an interest relating to the corporate stock which is the subject of the instant litigation. Two questions must be considered to determine if the requested intervention should be allowed: (1) Are the Applications timely? and (2) Is the Applicant's interest adequately represented by Plaintiff?

■ The Applicant failed to address the timeliness issue. Under the present status of the case, the Court is of the opinion that the instant Motions are not timely filed based on the following factors: (1) The actions have been pending for over 21 months prior to the filing of the Motions under consideration; (2) The actions have been at issue for over 15 months prior to the filing of said Motions; (3) The trial of the cases was commenced over 8 months prior and concluded almost 4 months prior thereto after the Court heard four days of testimony; (4) The evidence was closed and the cases were submitted for decision prior to the filing of the Motions, and (5) Applicant has had knowledge of the instant lawsuits for almost one year prior to the filing of the instant Motions to Intervene.[1]

■ What constitutes a timely application to intervene under Rule 24(a), *supra*, must be answered in each case in the exercise of the sound discretion of the Court. *Lumbermens Mutual Casualty Company v. Rhodes*, 403 F.2d 2 (Tenth Cir. 1968), cert. den. 394 U.S. 965, 89 S.Ct. 1319, 22 L.Ed.2d 567.

The instant Motions each indicate that Applicant's claims against Defendants are the same as those urged against Defendants by the Plaintiff in the cases at bar. Plaintiff has adequately presented his case as a minority stockholder of the two corporations involved and such representation is adequate to protect the owners of such stock whether it is ultimately determined Plaintiff or Applicant owns the same. As to the proposed claim against Plaintiff herein it would appear that same can and should be disposed of in the State Court litigation involving Applicant and Plaintiff.

■ Considering that Applicant's claims against Defendants are identical to those asserted by Plaintiff herein the following statement from the case of *United States v. International Business Machines Corp.*, 62 F.R.D. 530 (S.D.N.Y.1974) seems applicable:

"When the interests of an applicant for intervention are considered identical with those of a party the courts have developed a three-pronged test to determine whether intervention should be granted. This test received its first judicial articulation by Justice (then Judge) Blackmun in *Stadin v. Union Electric Co.*, 309 F.2d 912 (8th Cir. 1962), cert. denied, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963). He stated:

[I]nadequacy of representation is or may be shown by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervenor, or by the failure of the representative in the fulfillment of his duty.

Id. at 919, 83 S.Ct. 1298, 10 L.Ed.2d 415. This standard has received the endorsement of both the courts and leading commentators."

As the instant litigation has been tried before the Court it is easy for this Court to determine that there has been no collusion between Plaintiff and Defendants in this hard fought litigation. The interests between Applicant and Plaintiff as against the Defendants do not appear to be adverse. The Court is likewise in a position to observe that Plaintiff and Defendants have certainly fulfilled their duties to fully present their interests in the instant litigation in all respects. It cannot be said that Plaintiff has failed to fulfill his duty to represent the interests of the owner of the

---

1. Exhibit "C" to the proposed Complaint in Intervention is a Receipt dated January 10, 1975 whereby Plaintiff herein was given physical possession of the stock certificates in question by Applicant for the express purpose of introducing same in the instant action in support of the proposition that he was the record owner thereof.

corporate stock which is a common interest between Applicant and Plaintiff as to the Defendants. In the instant case, the Court finds Applicant does not meet any of the "three prongs" of the test relative to adequate representation.

As the Court finds that the Applicant's Motions are untimely filed and finds that Plaintiff has adequately represented the interests Applicant seeks to protect by intervention in the instant litigation as same relates to issues against Defendants herein, the Court finds, in the exercise of its discretion, that the Motions to Intervene by Roberta Edwards filed herein on December 30, 1975 should be denied.

It is so ordered this 12th day of January, 1976.

## ON MOTIONS TO DISMISS

This Order involves three cases and will be filed in each case because many of the parties are the same, and there are similar issues of law and fact as each case involves sales of corporate assets to insiders.

In Case No. C–74–305–D Civil Richard Walden sues H. K. Elrod, C. D. Long and T.E.L. Oil & Gas Corporation (T.E.L.). The basis of the suit is a transaction wherein Elrod and Long, who are identified as the President and Secretary of T.E.L., bought one-half of the assets of T.E.L. for what Plaintiff alleges to be inadequate consideration.

In Case No. C–74–306–D Civil Richard Walden sues H. K. Elrod And Associates, and T.E.L. The basis of this suit is also a sale of T.E.L.'s corporate assets. In this case the buyers are identified as H. K. Elrod and Associates. The Associates are further identified as officers, directors and majority stockholders of T.E.L. The property sold in this situation constituted all of the property owned by T.E.L. which remained after the sale mentioned in Case No. C–74–305–D Civil.

Construing the Complaints in Case No. C–74–305–D Civil and Case No. C–74–306–D Civil together, it appears that T.E.L. owned at one time a two-thirds interest in certain oil and gas producing property. On or about February 24, 1972 Elrod and Long purchased one half of T.E.L.'s two-thirds interest therein and on December 10, 1973 Elrod and Associates purchased the remaining one-third of these oil and gas producing properties. Plaintiff alleges in each instance that the property interest involved was worth at least $300,000.00 and that the purchase price paid by the Defendants in each instance was only $140,000.00. These purchases of corporate assets by Elrod and Long and/or H. K. Elrod and Associates are alleged to be fraudulent, in bad faith, and in breach of their fiduciary duties as directors, officers and majority shareholders in T.E.L.

The third case is Case No. C–74–307–D Civil. In this case Richard Walden sues H. K. Elrod, Helen L. Elrod, H. C. Hitch, Jr. and Guymon Crestview, Incorporated. The Plaintiff alleges that H. K. Elrod, Helen L. Elrod and H. C. Hitch, Jr. were the officers, directors and majority share-stockholders in Guymon Crestview, Incorporated, an Oklahoma corporation, whose sole business was owning and operating an apartment house in Guymon, Oklahoma. The Plaintiff alleges that the apartment was worth $275,000.00 and that the Defendants purchased the property for less than its actual value and that their actions were fraudulent and in bad faith.

The principal issues in each of these cases which must be considered prior to trial are whether the Plaintiff's residence is actually diverse to that of all the Defendants, whether Plaintiff is required to exhaust certain dissenting stockholders' remedies provided by the Oklahoma Business Corporation Act before he can come into this or any other Court, whether the alignment of the parties is incorrect, whether proper alignment would destroy the diversity jurisdiction of this Court and also, whether the Complaint should be dismissed for being defectively drawn. Defects appearing on the face of the Complaints are failure to verify the Complaints, failure to satisfy the requirement of Rule 9(b), Federal Rules of Civil Procedure by pleading with particular-

ity the facts constituting fraud in a case, failure to allege a demand on the directors as required by Rule 23.1, Federal Rules of Civil Procedure, and failure to allege that the action is not a collusive one for purposes of conferring jurisdiction on this Court as is also required by Rule 23.1, Federal Rules of Civil Procedure.

## I. DEFECTS APPARENT ON THE FACE OF THE COMPLAINT

### A. Verification

■ Although the Plaintiff asks for a form of individual relief in each of these cases he also seeks recovery through a stockholders' derivative action in each of these cases. Rule 23.1, Federal Rules of Civil Procedure, requires that the Complaint in a stockholders' derivative action be verified. None of the Complaints in these three suits is verified. The failure to verify a Complaint in a stockholders' derivative action has been held to be a fatal defect. *Marcus v. Textile Banking Company*, 38 F.R.D. 185 (S.D.N.Y.1965) citing Vol. 2 *Barron & Holtzoff, Federal Practice And Procedure*, 571. A District Court has the inherent power to dismiss the Complaint in a derivative action where the Plaintiff has failed to comply with verification. *Surowitz v. Hilton Hotels Corporation*, 342 F.2d 596 at 608 (Seventh Cir. 1965) reversed on other grounds 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807;[1] *Meeker v. Rizley*, 324 F.2d 269 (Tenth Cir. 1963). This Court may dismiss on its own Motion where the Complaint is inadequate. *Literature, Inc. v. Quinn*, 482 F.2d 372 (First Cir. 1973). How-

ever, where failure to verify appears to be a mere oversight and the Defendant has opposed the Complaint with vigor, leave should be granted to the Plaintiff to amend his Complaint. *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570 (S.D.N.Y.1972).[2]

It appears that the Plaintiff should be given leave to submit Amended Complaints which will cure the failure to verify as well as other defects which will be brought out in the following discussion.

### B. Failure to Allege Lack of Collusion

■ Rule 23.1, Federal Rules of Civil Procedure, requires that in a stockholder's derivative suit, "the complaint shall be verified and shall allege . . . that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have." This requirement seems not to have been the subject of much litigation and courts do not seem to attach much importance to it. Where the allegations of the Complaint do not indicate that there might be collusion, the making of the allegation and the verification thereof is unnecessary. *Kohler v. McClellan*, 156 F.2d 908 (Fifth Cir. 1946). However, the requirement is not just an empty formality as Complaints have been dismissed in recent cases where the pleadings, affidavits and depositions indicated that there was collusion. *Amar v. Garnier Enterprises, Inc.*, 41 F.R.D. 211 (C.D.Cal. 1966) cited in *Caribbean Mills, Inc. v. Kramer*, 392 F.2d 387 (Fifth Cir. 1968); *Carter v. Seaboard Coast Line Railroad Company*, 318 F.Supp. 368 (D.S.C.1970).

1. The Seventh Circuit was reversed because it held that a plaintiff must know of his own knowledge the allegations in the Complaint to be true. The Supreme Court held that a plaintiff could rely on the knowledge of an advisor.

2. Rule 23.1, Federal Rules of Civil Procedure does not state whether the verification is required to be made by the Plaintiff himself or whether his attorney may verify the Complaint for him. At least two cases have allowed verification by attorneys—*Bosc v. 39 Broadway*, 80 F.Supp. 825 at 827 (S.D.N.Y.1948) and *Hirshfield v. Briskin*, 447 F.2d 694 (Seventh Cir. 1971). Also in *Surowitz v. Hilton Hotels Corporation, supra*, Mr. Justice Harlan in his con-

curring opinion expressed the view that verification by attorney was proper.

The reason this point is brought up is that the Supreme Court in the *Surowitz v. Hilton Hotels Corporation, supra*, case has taken the view that the verification must be of the entire Complaint and not just those allegations required by Rule 23.1 and in this case the Plaintiff has submitted affidavits pertaining to diversity which tend to cure some but not all of the defects of failure of verification. Also, it appears that Plaintiff's attorney may try to verify the Complaint himself because of the fact that he has verified the affidavits regarding diversity and the Plaintiff himself has not verified these affidavits.

■ The type of collusion that is contemplated by the courts in a consideration of dismissal for collusion is the transfer of a minimal number of shares of stock for the purpose of creating diversity jurisdiction, the transferor retaining control of the lawsuit and being the real party in interest. *Amar v. Garnier Enterprises, Inc., supra; Caribbean Mills, Inc. v. Kramer, supra;* and *Carter v. Seaboard Coast Line Railroad Company, supra.*

■ The rule requiring a statement of non-collusion and verification does serve a valid purpose in that a derivative action should be dismissed if it is collusively brought and the requirement of verification puts pressure on the Plaintiff to tell the truth. This Court has the inherent power to dismiss a Complaint if it fails to comply with the Federal Rules of Civil Procedure. *Meeker v. Rizley, supra.* Therefore, even though Defendants have not made a motion on this ground, Plaintiff should be required to include statements of non-collusion and verify them. It does not appear from the Complaint, that there is a possibility that this case was collusively brought. However, it is felt that it would be poor procedure to allow the Plaintiff to skip this requirement as the courts in *Kohler v. McClellan, supra,* did, as there is a valid reason for the rule and it is plainly required by Rule 23.1, Federal Rules of Civil Procedure. Plaintiff should be given leave to remedy this omission in his Amended Complaints.

C. Failure to Allege a Demand on the Directors

■ Rule 23.1, Federal Rules of Civil Procedure, requires that the Complaint allege with particularity the efforts, if any, made by the Plaintiff to obtain the action he desires from the directors or comparable authority of the corporation, or if necessary from the shareholders, and the reasons for his failure to take this action. The Complaint should be dismissed if the Plaintiff fails to make this allegation. *Johnson v. Arthur Espey, Shearson Hammill & Co.,* 341 F.Supp. 764 (S.D.N.Y.1972); *Hawes v. Con-*

tra *Costa Water Co.,* 104 U.S. 450, 26 L.Ed. 827. This allegation is necessary because a shareholder is required to exhaust his intra-corporate remedies before coming into any Court.

■ The determination of whether or not a demand on the directors, or other corporate officers is necessary and whether the excuse for not making the demand is sufficient is within the sound discretion of the trial court. The decision will usually be based on the allegations of the Complaint. Courts have generally been lenient in excusing demand. *Jannes v. Microwave Communications, Inc.,* 57 F.R.D. 18 (N.D.Ill. 1972); *deHaas v. Empire Petroleum Company,* 435 F.2d 1223 (Tenth Cir. 1970).

■ The necessity of a preliminary demand on the directors before the commencement of a stockholders' derivative suit and the circumstances which set aside the demand is procedural in nature and is covered by Federal law. *Belcher v. Birmingham Trust National Bank,* 348 F.Supp. 61, at 142 (N.D.Ala.1968). *Meltzer v. Atlantic Research Corporation,* 330 F.2d 946 (Fourth Cir. 1964). In a situation where a derivative suit is brought against the majority of the directors of a corporation for wilful or negligent breach of their fiduciary duties a demand as a prerequisite to the bringing of a suit is almost always excused. *Jannes v. Microwave Communications, Inc., supra.* Similarly the demand is excused where the board of directors is subject to the control of the alleged wrongdoers and is hostile to the Plaintiff's claim. *Schreiber v. Jacobs,* 121 F.Supp. 610 (E.D.Mich.1953); *Liboff v. Wolfson,* 437 F.2d 121 (Fifth Cir. 1971); *Papilsky v. Berndt,* 59 F.R.D. 95 (S.D.N.Y.1973).

■ The Complaints in these cases fail to allege with particularity who the directors are. However, in each situation there are either allegations that the Defendants are the corporate officers and majority stockholders, as in Case No. C–74–306–D Civil, Case No. C–74–305–D Civil, or that the Defendants are the directors, officers and majority stockholders, as in Case

No. C–74–306–D Civil and Case No. C–74–307–D Civil. It appears from these allegations that a demand on the directors or majority shareholders probably would be useless. Especially since the Defendants have opposed the Complaints vigorously.[3]

 Although the necessity and deficiency of a preliminary demand are procedural in nature and are governed by Federal law, the underlying substantive law and standing to sue is determined by State law. *Brooks v. Weiser*, 57 F.R.D. 491 (S.D.N.Y. 1972). The general rule in Oklahoma is that a shareholder cannot sue to redress wrongs done to a corporation and that a shareholder ordinarily should obtain relief through the corporation itself. *Gaines v. Gaines Bros. Co.*, 176 Okl. 583, 56 P.2d 863 (1936). However, if the directors are guilty of a breach of trust, injurious to the corporate assets, or to the rights of the shareholders, or some of them, and if the corporation refuses to institute proper proceedings to redress these injuries, then one or more of the shareholders may proceed in his own name. *Gaines v. Gaines Bros. Co., supra; Dobry v. Yukon Electric Co.*, 290 P.2d 135 (Okl.1955); *Weston v. Acme Tool, Incorporated*, 441 P.2d 959 (Okl.1968). The action must be one which could have been brought by the corporation. *Weston v. Acme Tool, Incorporated, supra*. A preliminary demand on the directors is usually required but may be waived if it is shown to be useless. *Greer Inv. Co. v. Booth*, 62 F.2d 321 (Tenth Cir. 1932). Leave should be granted Plaintiff to supply this omission in his Amended Complaints.

II. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO ALLEGE FRAUD WITH THE PARTICULARITY REQUIRED BY RULE 9(b), FEDERAL RULES OF CIVIL PROCEDURE

In each of these cases Plaintiff alleges that the actions complained of were fraudulent. In each of the cases one or more of the Defendants' Motion To Dismiss alleges that the Complaint fails to allege fraud with the specificity required by Rule 9(b), Federal Rules of Civil Procedure.

 In essence what the Plaintiff has alleged is that the Defendants' were directors, officers and majority shareholders and that they used their powers as such to transfer corporate assets to themselves for less than adequate consideration.

It is true that the Plaintiff has not alleged each element of the variety of fraud upon which he is relying and alleged facts to show how Defendants' conduct fits into this category. However, the cases do not require this kind of pleading even though such procedure may be standard practice in some areas or courts.

 Rule 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity." The important allegations in the pleadings are those setting forth the circumstances. If the circumstances are set out then there is no requirement that the word fraud even be used, in the absence of a statute or rule so providing, *Nolan Bros, Inc. v. United States*, 266 F.2d 143 (Tenth Cir. 1959). Rule 9(b), Federal Rules of Civil Procedure only requires the identification of the circumstances constituting the fraud so that the defendant can prepare an adequate answer from the allegations. *Walling v. Beverly Enterprises*, 476 F.2d 393 (Ninth Cir. 1973). Rule 9(b), Federal Rules of Civil Procedure requires particularity but that does not mean that the plaintiff has to plead detailed evidentiary matters. *Textile Banking Company v. Starensier, Inc.*, 38 F.R.D. 492 (D.Mass.1965).

 The real problem here appears to be not whether the pleadings are sufficient but whether the facts as plead fit into one of the categories of actionable fraud. It appears that the real cause of action in this case is a breach of the fiduciary duties owed by officers and directors of a corporation to

3. The decision of the trial court is usually based solely on the allegations of the Complaint. *de-Haas v. Empire Petroleum Company, supra.*

its shareholders. However, there is a species of fraud which could fit this situation. That is a "deception practiced on a third person by means of a bargain between other persons." 37 Am.Jur.2d *Fraud and Deceit*, Section 3. There is some Oklahoma authority that supports the theory that there is an actionable fraud where one who is in a confidential relationship with another and through that relationship secures an undue advantage. In such a situation equity will scrutinize the transaction, and in the absence of convincing proof of good faith therein, will grant relief by vacating the transaction. *Looney v. Chastain*, 395 P.2d 571 (Okl.1964). It does not appear that Oklahoma has ever considered whether this type of fraud action is proper where a corporate officer or director is alleged to have breached his fiduciary duty.

At any rate facts have been plead and if these facts support a form of fraud, Plaintiff should be allowed to prove it, and the action should not be dismissed on these grounds.

### III. DEFENDANTS' MOTIONS TO DISMISS ON THE GROUNDS THAT THE INVOLVED CORPORATIONS ARE MISALIGNED AS DEFENDANTS AND THAT PROPER ALIGNMENT WILL DESTROY DIVERSITY

 In each of these cases one or more of the Defendants has moved for dismissal alleging that the involved corporations are misaligned as Defendants, that they should be aligned as Plaintiffs, and that proper alignment will destroy diversity.

"The federal courts have established the rule that the corporation is to be aligned as a party defendant; and federal diversity jurisdiction is determinable in accordance with that alignment, where, with respect to the claim sought to be enforced with the stockholder's derivative suit, the corporation is 'antagonistic' to the stockholder." 68 A.L.R.2d 833.

The test of "antagonism" between the corporation and the stockholder is to be found in *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct.

1112, 1114, 1 L.Ed.2d 1205, where the Court said,

"There will, of course, be antagonism between the stockholder and the management where the dominant officers and directors are guilty of fraud or misdeeds. But wrongdoing in that sense is not the sole measure of antagonism. There will be antagonism whenever the management is aligned against the stockholder and defends a course of conduct which he attacks."

 Where there is a state statute which requires the corporation to be aligned as a party plaintiff, that statute controls. 68 A.L.R.2d 835. No Oklahoma statute requiring such alignment has been found. The common practice in Oklahoma derivative suits seems to be to align the corporation as a defendant. *Weston v. Acme Tool, Incorporated, supra.*

The Motion To Dismiss on grounds of improper alignment should be overruled.

### IV. DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO EXHAUST DISSIDENT STOCKHOLDERS' REMEDIES PROVIDED BY THE OKLAHOMA BUSINESS CORPORATION ACT

In each of the cases one or more of the named Defendants has moved for dismissal on the grounds that Plaintiff has failed to exhaust certain dissident stockholders' remedies provided by the Oklahoma Business Corporations Act. The sections relied on are 18 Oklahoma Statutes 1.157, subd. b, 1.159, 1.160 and 1.164. There are very few Oklahoma cases which have dealt with these sections but a consideration of the language of the sections seems to resolve most of the problems.

 At the outset, it appears that the motion should not be granted in Case No. C–74–305 Civil. 18 Oklahoma Statutes 1.157, subd. b provides

"Any shareholder shall have the right to dissent to a sale, lease, exchange, or other disposal of <u>all or substantially all of the property and assets</u> of such corporation in

the manner provided in Section 164 of Chapter A, Title 18, S.L.1947." (Underscoring supplied)

From the Complaint in Case No. 74–305–D Civil it appears that the sale complained of involves only one half of the corporate assets of the involved corporation. Therefore, § 1.157, subd. b does not apply. Also, the other sections which the Defendants rely on do not expand the category of situations in which the dissident stockholders' remedy may be used. § 1.159 provides the procedure which should be followed by the dissenting stockholder. § 1.160 provides the means to fix the value of the shares of the dissenting stockholder which the corporation is forced to buy where the stockholder dissents successfully, and § 1.164 provides a procedure whereby the corporation can sell all or substantially all of its assets outside the normal situations authorized by law.

■ In the other two cases, C–74–306–D Civil and C–74–307–D Civil it does appear from the Complaints that the sale complained of involved all or substantially all of a corporation's assets. However, § 1.157, subd. b applies only to sales made pursuant to Section 164 of Chapter A, Title 18, S.L. 1947, which section is currently encoded as 18 Oklahoma Statutes 1.164 which provides:

"§ 1.164 Sale of assets requiring special authorization of shareholders

a. The sale, lease, exchange, or other disposition of all or substantially all the property and assets of a domestic corporation, with or without the goodwill, otherwise as provided in Section 163, may be made upon such terms and conditions and for such consideration, which may consist, in whole or in part, of money or property, including shares of any other corporation, domestic or foreign, as may be authorized in the following manner:

(1) The board of directors shall adopt a resolution recommending such sale, lease, exchange, or other disposition, and directing the submission thereof to a vote at a meeting of the shareholders, which may be either an annual or a special meeting;

(2) Written or printed notice, stating that the purpose, or one of the purposes, of such meeting is to consider the sale, lease, exchange, or other disposition of all, or substantially all, the property and assets of the corporation, as the case may be, shall be given to each holder of outstanding shares, whether such shares be entitled to vote at such meeting or not, within the time and in the manner provided by this Act for the giving of notice of meetings of shareholders. If such meeting be an annual meeting, such purpose may be included in the notice of such annual meeting;

(3) At such meeting the shareholders may authorize such sale, lease, exchange, or other disposition, and fix, or may authorize the board of directors to fix, any or all of the terms and conditions thereof and the consideration to be received by the corporation therefor. Such authorization shall require the affirmative vote of the holders of at least a majority of the outstanding shares entitled to vote at such meeting, unless any class of shares be entitled to vote as a class in respect thereof, in which event such authorization shall require the affirmative vote of the holders of at least a majority of the total outstanding shares entitled to vote at such meeting and at least a majority of the outstanding shares of each class of shares entitled to vote as a class in respect thereof.

b. Nothing contained in this Section shall be construed to limit the right of the shareholders to authorize and direct the disposition or encumbrance of the assets of the corporation without prior action on the part of the board of directors. Laws 1947, p. 142, § 164."

Defendants T.E.L. in Case No. C–74–306–D Civil and Guymon Crestview, Incorporated in Case No. C–74–307–D Civil have both moved for dismissal on the grounds that 18 Oklahoma Statutes 1.164 allows the sale of all or substantially all of the assets of a corporation. However, they have failed to allege that the sales complained of were made pursuant to this section and that the requirements of this section have been complied with.

It is apparent that the right to dissent extended by 18 Oklahoma Statutes 1.157, subd. b is limited to those situations in which the Corporation has complied with the Requirements of 18 Oklahoma Statutes 1.164. Defendants allege that the mere existence of this section requires that a plaintiff exhaust the remedy therein provided. However, in reading the section it becomes apparent that the § 1.157, subd. b right to dissent is contingent upon the transaction being complained of being a disposition of corporate assets pursuant to § 1.164. Defendants are placing an interpretation on the statutes which appears to be incorrect. There are no Oklahoma cases on this point.

Insofar as Defendants have not alleged that they have complied with the requirements of 18 Oklahoma Statutes § 1.164 and also because Plaintiff has alleged in his Brief in Support of Plaintiff's Objection To Defendants' Plea to Jurisdiction and Motion to Dismiss (p. 5) that the Defendants did not provide him with the required notice, it is felt that the motion to dismiss should not be granted. If Defendants can show that they have complied with the requirements of § 1.164 when they sold the property to themselves then Plaintiff may be precluded from bringing the actions in Case Nos. C–74–306–D Civil and C–74–307–D Civil.

## V. MOTIONS TO DISMISS ON THE GROUNDS THAT PLAINTIFF IS NOT OF DIVERSE CITIZENSHIP

In each of the Complaints the Plaintiff alleges that he is a citizen of New York and resides in New York City. In each of the cases one or more of the parties Defendant have made a motion to dismiss on the grounds that the Plaintiff is in fact a citizen of Oklahoma and therefore there is no diversity. Diversity jurisdiction in Federal Courts is determined from the allegations of the Complaint. *Alfonso v. Hillsborough County Aviation Authority*, 308 F.2d 724 (Fifth Cir. 1962). If a Plaintiff's allegation of jurisdictional facts is challenged by a Defendant then the Plaintiff has the burden of supporting the allegations with competent proof. *Thomson v. Gaskill*, 315 U.S.

442, 62 S.Ct. 673, 86 L.Ed. 951; *McNutt v. General Motors Accept. Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135. The burden of proof in such a situation is by a preponderance of the evidence. *Mid-Continent Pipe Line Co. v. Whiteley*, 116 F.2d 871 (Tenth Cir. 1941).

Where there is no statutory direction or procedure upon an issue of jurisdiction the mode of its determination is left to the trial court. *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; *Schramm v. Oakes*, 352 F.2d 143 (Tenth Cir. 1965). The trial court may gather evidence on the question of jurisdiction by affidavits or otherwise to determine the facts as they exist and based upon the evidence so obtained to decide the jurisdictional dispute. *Kvos v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; *Schramm v. Oakes, supra.* A diversity action should be dismissed if at anytime it becomes apparent that there is a lack of diversity. *Bradbury v. Dennis*, 310 F.2d 73 (Tenth Cir. 1962).

A Federal Court has jurisdiction over an action by a plaintiff who has changed his domicile from one state to another even though the change was made for the purpose of creating diversity. *Paudler v. Paudler*, 185 F.2d 901 (Fifth Cir. 1950); *Peterson v. Allcity Insurance Company*, 472 F.2d 71 (Second Cir. 1972). Jurisdiction depends on the status of the parties as of the commencement of the suit. *Johnston v. Cordell National Bank*, 421 F.2d 1310 (Tenth Cir. 1970). To effect a change of citizenship for purposes of federal diversity jurisdiction from one state to another, there must be a change of domicile to the new state and intent to remain there permanently or indefinitely. *Walden v. Broce Construction Company*, 357 F.2d 242 (Tenth Cir. 1966).

Plaintiff has submitted an affidavit verified by his attorney in support of his allegation that he is in fact a resident of the State of New York. This affidavit was submitted in response to the allegations in the Defendants' Motion To Dismiss. In construing together the allegations of both the Plaintiff and Defendants there are no

facts in controversy except for the ultimate conclusion of citizenship. Plaintiff has apparently lived in Oklahoma for substantially all of his life. Plaintiff was married and lived in Oklahoma City, Oklahoma but was divorced in 1973. The house there was awarded to his wife. After his divorce he maintained an apartment in Guymon, Oklahoma that he used when he came to Oklahoma to supervise his ranching operation in Oklahoma. He originally filed this lawsuit in the District Court of Texas County, Oklahoma listing at that time the Guymon, Oklahoma apartment as his residence. He subsequently dismissed his Complaint in the Texas County action, gave up his apartment in Guymon and thereafter apparently maintained all the incidents of citizenship and domicile in New York, New York where he had previously maintained a place of residence and business. The affidavit submitted by Plaintiff's attorney asserts that Plaintiff intends to make his permanent residence in New York, New York.

■ The preponderance of evidence from these allegations and affidavits indicate that Plaintiff has changed his physical domicile to New York City and that he intends to remain there in the future. Change of residence and intent to remain permanently or at least indefinitely are the criteria which this Court should consider in determining whether a change of domicile has resulted in a change of citizenship for the purposes of conferring diversity jurisdiction. *Walden v. Broce Construction Company, supra.*

The Motion to Dismiss on the grounds of lack of diversity citizenship should therefore be overruled at this time without prejudice. The door is left open to dismiss on this ground, if at any time in the future it becomes apparent that the Plaintiff is not truly diverse.

The Plaintiff as to each action is granted fifteen (15) days to file an Amended Complaint. All Motions to Dismiss and Pleas to Jurisdiction are overruled. The Amended Complaints will be answered within twenty (20) days following their filing.

It is so ordered this 9th day of August, 1974.