573 F.Supp. 255 (1983)
In re LONGHORN SECURITIES LITIGATION.
MDL Docket No. 525.[*]
United States District Court, W.D. Oklahoma.
September 28, 1983.
*256 *257 *258 Raymond N. Erlach, Hunt, Gram & Epstein, San Francisco, Cal., for Edward G. Hirn, Jack Mabray, etc., Penn Square Nat. Bank, et al., Frank Thomas, et al., Robert R. Agnew, et al., Frank C. Lenahan, et al., Robert R. Agnew, et al., Norman Hinman, et al.
Bart A. Boren, Bodnar, Williams & Boren, Oklahoma City, Okl., for American Bank and Trust, Edmond, Okl.
James E. O'Halloran, Jr., O'Halloran, Lively & Walker, Northbrook, Ill., H. Thomas Coghill, Coghill & Goodspeed, Denver, Colo., for D & G Enterprises, et al.
Murray E. Abowitz, Abowitz & Welch, Oklahoma City, Okl., for Longhorn Oil & Gas Co., et al., Longhorn Developmental Program, Ltd. et al., Longhorn Gas Programs Inc., et al., and Longhorn Specified Property Drilling Programs, Ltd., et al.
John A. McCaleb, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for Neal A. McCaleb.
Jay R. Bond, Oklahoma City, Okl., for Jack Coleman, et al.
Richard D. Hampton, Oklahoma City, Okl., for F. Joseph Scharon.
O. Christopher Meyers, Lawton, Okl., for William W. Cook, et al., Charles R. Gibbs et al.
David A. Cheek, McKinney, Stringer & Webster, Oklahoma City, Okl., for Citizen's Nat. Bank & Trust Co.
Eddie Y. Newcombe, Lawton, Okl., Security Bank and Trust Co. of Lawton.
William S. Dixon, Robert M. St. John, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., for Carl Brown and 1st Nat. Bank in Albuquerque.
John M. Eaves, Eaves & Darling, Albuquerque, N.M., for Conley G. Defferding, et al.
Kenneth A. Hunt, Query, Fairfield, Reecer, Strotz & Stribling, Albuquerque, N.M., for Jack Kennedy, et al.
John M. Law, Denver, Colo., for Fred B. Groves, et al.
Michael J. Peterson, Bosworth & Slivka, P.C., Denver, Colo., for JMJ Partnership, et al., 4-Square Investment Club, etc., et al., John R.P. Wheeler.
John W. Suthers, Timothy V. Dix, Sparks, Dix & Enoch, Norman A. Palermo, Phillip A. Vaglica, Quigley & Palermo, Bernard L. Trott, Terry D. Hendricks, Hendricks & Hendricks, Robert Dunlap, Gerald Tolley, Colorado Springs, Colo., for Inland Foods, Inc. et al., Roy Jackson, et al., Ronald M. Semevold, Randolph G. Lundeen, Ray L. Wilson, Lyle L. Guslander, James C. Wo, et al.
Peter J. Mitoff, Southfield, Mich., for Ralph Sophiea.
David J. Hutchinson, Hooper, Hathaway, Price, Beuche & Wallace, Ann Arbor, Mich., for MOG Investors, et al.
Edmond F. Devine, Ann Arbor, Mich., for Nat. Bank and Trust Co. of Ann Arbor, et al.
Stanley R. Kirk, Detroit, Mich., for Doylan B. Forney.
Ross R. Kinney, Quarles & Brady, Milwaukee, Wis., for Benjamin J. Free, etc., Mary Jane K. Hanson, Gene and Martin Siegel.
Alan Marcuvitz, Peregrine, Marcuvitz & Peltin, Milwaukee, Wis., for Gene Klurfeld.
Jack J. Gimbel, Milwaukee, Wis., for Martin Siegel.
Michael B. Apfeld, Godfrey & Kahn, Milwaukee, Wis., for Matt Meyer.
Richard D. Burbidge, Stephen B. Mitchell, Burbidge, Mabey & Mitchell, Salt Lake City, Utah, for Alan F. Frank, et al., G. Myron Harrison, Dr. Robert Horne.
Stewart H. Foreman, Shartisis, Friese & Ginsburg, San Francisco, Cal., for Authur J. Shartsis, et al.
Thomas H. Dahlk, Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, Neb., for Richard C. Kekeise, et al., Edward E. Gatz, et al., David N. Kettleson, et al., Harold H. Brandt, et al.
Thomas F. Flaherty, Zweiback, Kasher, Flaherty & DeWitt, P.C., Omaha, Neb., for *259 Northwestern Nat. Bank, et al., First Westroads Bank, Inc., Bank of the Midlands.
Keith I. Frederick, Schmit, Ford, Mooney & Frederick, Omaha, Neb., for Southwest Bank of Omaha, et al., Security Nat. Bank of Omaha.
Dean F. Suing, Katskee & Henatsch, Omaha, Neb., for Omaha Nat. Bank.
Henry C. Phibbs, II, Jackson, Wy., G. Bland Hoke, Jr., et al.
R. Michael Mullikin, Jackson, Wyo., for First Wyoming Bank, et al.
John B. Rogers, Cheyenne, Wyo., for Pacific Investments, et al.
Dean Carlton, Dallas, Tex., for Laurella J. Milfeld.
Gerrit H. Wormhoudt, Thomas J. Lasater, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for Kansas State Bank & Trust Co., et al.
Gerald F. Hempstead, Suelthaus, Drueger, Cunningham, Yates & Kaplan, St. Louis, Mo., for Laurence Avins, County Bank of St. Louis, et al.
John T. Murphy, Jr., St. Louis, Mo., for Climate Engineering Corp.
S. Michael Thomas, Hanlon, Nouss, Inkley & Coughlin, Clayton, Mo., for United Missouri Bank of St. Louis.
Dudley C. Dunlop, Clayton, Mo., for Arthur J. De Shetler.
Rodney W. Sippel, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for Mark Twain State Bank.
Ford, Marrin, Esposito & Witmeyer, New York City, for CGZ Partnership, etc., et al.
Sol V. Slotnik, New York City, for Arlene Roberts.
Coles & Griffin, Ltd., Chicago, Ill., for David C. Burnidge.
Ralph Elliott, Robert Plager, Plager, Hasting & Krug, Freeport, Ill., for 1st Nat. Bank of Freeport.
Alan M. Oshima, Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, for Bank of Hawaii.
Wallace S. Fujiyama, Fujiyama, Duffy & Fujiyama, Honolulu, Hawaii, for First Hawaiian Bank.
David E. Wagenseller, Shirk, Reist & Posey, Lancaster, Pa., for Sidney Lieberman.
John K. Villa, Williams & Connolly, Washington, D.C., for Carl W. Swan.
Jeffrey L. Smith, Cohen, Brame & Smith, P.C., Denver, Colo., for Jay L. Anderson.
Roger L. Keithley, Krys, Boyle, Golz & Keithley, Denver, Colo., for Dennis C. Russell.
Charles C. Green, Turner, Turner, Green & Baun, Oklahoma City, Okl., for Bill P. Jennings.
John N. Hermes, Reid E. Robinson, Oklahoma City, Okl., John Michael Clear, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Nancy E. Friedmen, Sheinfeld, Maley & Kay, Houston, Tex., for Stifel, Nicolaus and Co., Inc., Robert M. Cochran, J.D. Allen.
Cheryl A. Crandall, John E. Bush, Denver, Colo., for Central Bank and Trust Co. d/b/a Central Bank of Denver.
Robert C. Fisk, Finlayson, McKie & Fisk, Omaha, Neb., for Bank of Millard.
Paul Scott Dye, Baird, Holm, McEachen Pedersen, Hamann & Strasheim, Omaha, Neb., for Douglas County Bank and Trust Co.
Joseph Polack, Polack & Woolley, P.C., Omaha, Neb., for U.S. Nat. Bank of Omaha/Center Bank.
Meyer H. Coren, Viren, Epstein, Leahy & Coren, Omaha, Neb., for First Westside Bank.
Clayton Byam, Omaha, Neb., for American Nat. Bank.
William J. Mueller, Sodoro, Daly & Sodoro, Omaha, Neb., for Ames Bank.
Joyce Dixon, Dixon, Dixon & Minahan, P.C., Omaha, Neb., for First Nat. Bank of Omaha.
Mary Beth Frankman, Nelson & Harding, Omaha, Neb., for Packers Nat. Bank In Omaha.
*260 Michael Kirschner, Hastie & Kirschner, Oklahoma City, Okl., for Utica Nat. Bank & Trust Co.
Edward F. Pohren, Omaha, Neb., for Northside Bank.
Burck Bailey, Oklahoma City, Okl., for William Patterson.
Grey W. Satterfield, Kornfeld, Satterfield, McMillin, Harmon, Phillips & Upps, Oklahoma City, Okl., for Continental Drilling Co.
Randall A. Peterman, Elam, Burke, Evans, Boyd & Koontz, Boise, Idaho, for First Interstate Bank of Idaho, N.A.
Michael Ryan, Milwaukee, Wis., for First Bank of Milwaukee, N.A.
Charles A. Crocco, Jr., Lunney & Crocco, New York City, for Citibank, N.A.
Robert S. Baker, Michael L. Bardrick, Oklahoma City, Okl., Richard M. Franklin, Baker & McKenzie, Chicago, Ill., for Cyril H.C. Fung.
Tym J. Kerr, Crowley, Fuller & Manning, Chicago, Ill., for Timothy Brennan.
Gregory R. Piche, R. Tim McKenna, Spurgeon, Haney & Howbert, Colorado Springs, Colo., for Exchange Nat. Bank.
William Stratton, Lawton, Okl., for Sheridan Bank.
R. Keith Jennings, Lawton, Okl., for Ft. Sill Nat. Bank.
James E. Work, Shirk, Work, Robinson & Williams, Oklahoma City, Okl., for Nichols Hill Bank.
Roland Tague, Groves, Bleakley & Tague, Oklahoma City, Okl., for Fidelity Bank, N.A.
Lowell T. Cage, Leger, Hall, Hill, Glover & Gage, Houston, Tex., for TOS Industries, Inc. d/b/a Texas Oil Field Supply, Inc.
Kenneth Spears, Spears & Forbes, Oklahoma City, Okl., for First Penn Corp.
Robert G. Perrine, Talley & McIlroy, Norman, Okl., for Eldon L. Beller.
Harold M. Durall, Oklahoma City, Okl., for Frank L. Murphy.
James W. Bill Berry, Oklahoma City, Okl., David M. Becker, Wilmer, Cutler & Pickering, Washington, D.C., for Ronald H. Burks.
John Snodgrass, David T. Hedges, Jr., Vinson & Elkins, Houston, Tex., for Elizabeth Merrick Cole, Gary M. Cook, James G. Randolph, Jerry Richardson, W.A. "Dub" Ross, Gene Smelser.
Jack G. Bush, Bush, Klaus & Underwood, Oklahoma City, Okl., for C.F. "Tag" Kimberling.
George F. Short, Short, Barnes, Wiggins, Margo, Adler & Worten, Oklahoma City, Okl., for Marvin K. Margo.
John Goodman, Oklahoma City, Okl., for John Preston.
James A. Kirk, Kirk & Chaney, Oklahoma City, Okl., for Bill Stubbs.
Fred S. Nelson, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., for John E. Rooney.
Kirk D. Fredrickson, Day, Fredrickson, Merrick & Patton, Oklahoma City, Okl., for Inv. Search, Inc.
Clem W. Fairchild, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., for Lawrence C. Zink, et al.
David A. Welte, Polsinelli, White, Schulte & Vardeman, Kansas City, Mo., for Traders Bank of Kansas City.
Duke W. Ponick, Jr., Kansas City, Mo., for Metropolitan Bank.
Dennis R. Rilinger, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for City Bank & Tr. Co., United Missouri Bank, Overland Park Bank & Trust Co.
Ford R. Nelson, Jr., Dietrich, Davis, Dicus, Rowlands & Schmitt, Kansas City, Mo., for Blue Ridge Bank & Tr. Co.
Lewis A. Heaven, Jr., Bennett & Heaven, Shawnee, Kan., for Shawnee State Bank.
Benjamin F. Mann, Blackwell, Sanders, Matheny, Weary & Lombardi, Hal E. Morris, Kansas City, Mo., for Commerce Bank of Independence.
*261 Laurel Bank of Raytown, Raytown, Mo., pro se.
Jack B. Robertson, Field, Gentry, Benjamin & Robertson, Kansas City, Mo., for Mercantile Bank & Trust Co.
James Douglas Pickett, Winnsboro, Tex., for Ben Jones.
Jerry Russell, Dallas, Tex., for American Nat. Bank of Garland, Texas.
Barry R. Davis, Lee, Beuch, Davis & Coulson, Oklahoma City, Okl., for V.L. Fred Smith.
Matthew J. Iverson, Abraham & Fox, Chicago, Ill., for Roy Jackson, et al.
James P. Houghton, Albuquerque, N.M., Charles C. Baker, Richard B. Noulles, Ronald N. Ricketts, Gable & Gotwals, Tulsa, Okl., Kenneth E. Sherer, Freeman, McKenzie, Mathews, Sherer & Stepek, Mount Clemens, Mich., Richard C. Mellon, Elam, Burke, Evans, Boyd & Koontz, Boise, Idaho, Duncan L. Clore, Dallas, Tex., James A. Walker, Martin, Pringle, Oliver, Triplett & Wallace, Wichita, Kan., James M. Byrne, Lashly, Caruthers, Baer & Hamel, St. Louis, Mo., Richard C. Sutton, Jr., G. Richard Morry, Hamilton, Gibson, Nickelsen, Rush & Moore, Honolulu, Hawaii, S. Rex Lewis, Howard, Lewis & Peterson, Provo, Utah, John E. North, Jr., Omaha, Neb., Stephen V. Moser, Holland & Hart, Denver, Colo., Mark Solomon, Lionel, Sawyer & Collins, Las Vegas, Nev., James P. Houghton, Albuquerque, N.M., Daniel M. Donahue, Michael F. O'Brien, Paddock, McGreevy & Johnson, Rockford, Ill., for Federal Deposit Ins. Corp.
Michael H. Schaalman, Mark E. Sanders, Quarles & Brady, Milwaukee, Wis., for Gene Klurfeld, Martin Siegel.
H. Thomas Coghill, Coghill & Goodspeed, Denver, Colo., Bruce T. Wallace, Hooper, Hathaway, Price, Beuche & Wallace, Ann Arbor, Mich., for Carl Brown, Inland Foods, et al., JMJ Partnership, et al., Four Square Investment Club, et al., John R.P. Wheeler, G. Bland Hoke, et al., Laurence Avins, Climate Engineering Corp., Arthur J. De Shetler, Barry K. Gray.
Red Bridge Mercantile Bank, Kansas City, Mo., pro se.
R.G. Roberts, president, Citizens Nat. Bank, Fort Scott, Kan., for Citizens Nat. Bank.
Earnest W. Lohf, Lohf & Barnhill, P.C., Denver, Colo., William E. Shade, Shade, Doyle, Klein, Otis, Shaba & Frey, Charles A. Karowsky, Karowsky, Witwer & Oldenburg, Greeley, Colo., for John R. Serhant.
Douglas Edwards, Beckley, Singleton, DeLanoy & Jemison, Las Vegas, Nev., for Chester W. Eskey, Joseph W. Brown, John H. Payne.
John C. Whelton, Las Vegas, Nev., for Valley Bank of Nevada.
Greeley Nat. Bank, Greeley, Colo., pro se.
Horton, Barbaro & Reilly, Santa Ana, Cal., pro se.
Oster & Shuchman, Santa Ana, Cal., for Sunwest Bank, et al.
B.G. Iverson, Monroe, La., for John Mabray, etc.
Burton L. Wade, Thompson L. Clarke, St. Joseph, La., for Tensas State Bank.
D.R. Sartor, Jr., Snellings, Breard, Sartor, Inabnett & Trascher, Monroe, La., for Tensas State Bank, American Bank & Tr. Co. of Lafayette, et al.
James R. Lewis, Lewis & Lolley, Lafayette, La., for Thomas J. Hanchey.
John W. Hutchison, Voorhies & Labbe, Lafayette, La., for American Bank & Trust Co. of Lafayette, et al.
David Foltyn, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for Richard Sucher.
John H. Bernstein, Higgins & Okun, Omaha, Neb., for William Chrisman.
Daniel E. Duncan, Albuquerque, N.M., for Leroy J. Miller.
John M. Kulikowski, Albuquerque, N.M., for First Interstate Bank.
Steven Fairfield, Query, Fairfield, Reecer, Strotz & Stribbling, Albuquerque, N.M., for Jack Price.
*262 John Beckstead, Greene, Callister & Nebeker, Salt Lake City, Utah, for Zions First Nat. Bank.
John C. McMurry, Oklahoma City, Okl., for plaintiffs.
Peter F. Lindborg, Albuquerque, N.M., for Conley G. Defferding, et al.
A.P. Murrah, Jr., Oklahoma City, Okl., for Omaha Bank Group, First Interstate Bank.
James P. Linn, Ricki S. Darby, Linn & Helms, Oklahoma City, Okl., for Michigan Nat. Bank.
Blair J. Trautwein, Hathaway, Speight & Kunz, Cheyenne, Wyo., for First Wyoming Bank.
Frank V. Ariano, Elgin, Ill., for Larkin Bank.
Joyce A. Dixon, Dixon, Dixon & Minahan, Omaha, Neb., for First Nat. Bank of Omaha.
Donald E. Downen, Gigray, Miller, Downen & Weston, Caldwell, Idaho, for Edward G. Hirn.
P. Mark Thompson, Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for Longhorn Oil & Gas, Longhorn Gas Programs, Inc., Carl Swan, J.D. Allen, John Lang.
Paul Walters, Edmond, Okl., for Bobby Brown, Jerry Brown, Richard Anderson, Imozelle Anderson.
James A. Jennings, Oklahoma City, Okl., for Liberty Bank.
Richard Young, Lawrence Ponoroff, Colorado Springs, Colo., Stephen L. Elliott, Kemp, Smith, Duncan & Hammond, Albuquerque, N.M., Kaye, Scholer, Fierman, Hays & Handler, New York City, Darrell L. Warta, Jay F. Fowler, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., J. William Conger, Harzog, Conger & Cason, Oklahoma City, Okl., for Longhorn Gas Programs, et al.
Joel Wilkinson, Dallas, Tex., for Laurella Milfeld.
John B. McClane, Godfrey, Decker, McMackin, Shipman, McClane & Bourland, Fort Worth, Tex., for Longhorn Oil & Gas, Longhorn specified properties, Carl Swan.
George W. Bramblett, Jr., Haynes & Boone, Dallas, Tex., for Bill Jennings.
James R. Gilliland, Gilliland, Hays, Gilliland & Dillon, Hutchinson, Kan., for Central State Bank of Hutchinson.
Dennis O. Smith, Hutchinson, Kan., for Bank of Kansas South Hutchinson.
Thomas Cummings, Clayton, Mo., for County Bank of St. Louis.
Robert L. Roark, McKinney, Stringer & Webster, Oklahoma City, Okl., for CGZ Partnership et al.
Stephen Moore, Thomas, Thomas, Keeling & Moore, Rockford, Ill., for Ronald M. Semevolos.
Thomas Laughlin, Connolly, Oliver, Goodard, Coplan & Close, Mark Boswell, Rockford, Ill., for American Nat. Bank & Trust Co. of Rockford.
Vernon Char, Peter J. Herman, Damon, Key, Char & Bocken, Honolulu, Hawaii, for Lyle Guslander, et al.
Thomas J. Dunn, Joseph L. Werntz, Moses, Dunn, Gecley, Espinosa & Tuthill, Albuquerque, N.M., for C. Blake Chanslor.
Martin E. Threet, Albuquerque, N.M., for American Bank of Commerce.
Gerald D. Mindell, Arthur F. Radke, Paul K. Vickrey, Chicago, Ill., John B. Estes, Harry A. Woods, Jr., Oklahoma City, Okl., for Continental Illinois Nat. Bank & Trust Co. of Chicago.
Jon J. Key, Reno, Nev., for William O. Pearce.
Edward J. McIntyre, Gray, Cary, Ames & Frye, San Diego, Cal., Jones, Givens, Gotcher, Doyle & Bogan, Inc., Graydon D. Luthey, Jr., Tulsa, Okl., for third party witnesses.

ORDER
EUBANKS, Chief Judge.
What began in late 1981 and early 1982 as a few, scattered securities fraud suits has grown to be a massive, multidistrict litigation. In re Longhorn Securities now *263 encompasses over eighty individual actions, involving hundreds of plaintiffs and well over fifty defendants, including: Longhorn Oil and Gas Company and its officers, directors, subsidiaries, related entities, stockbrokers, accountants, and attorneys; Penn Square Bank, N.A., and its officers, directors, holding company, and receiver, the Federal Deposit Insurance Corporation [hereinafter "FDIC"]; Continental Illinois National Bank and Trust Company of Chicago; and numerous other banks that issued letters of credit on behalf of the plaintiff-investors. To expedite this litigation, see Fed.R.Civ.P. 1, the Court has required the defendants to answer the complaints even though their pre-answer motions were still under consideration. First Preliminary Pretrial Order § III (Feb. 17, 1983). See Fed.R.Civ.P. 12(a). See generally Manual for Complex Litigation § 1.10 (5th ed. 1982).
Before the Court now are motions to dismiss too numerous to count. To make the task more nearly manageable, the parties have been urged to cooperate through their respective liaison and lead counsel and to adopt unified papers insofar as possible; therefore, their contentions will, for the most part, be considered together, generically, and will be applied similarly in like cases. This omnibus Order addresses the defendants' Federal Rule 9(b) and disparate 12(b)(6) challenges. Two separate Orders, also entered this day, address the FDIC's Rule 12(b)(3) improper venue motions and its Rule 12(b)(6) motions based on D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). For the reasons explicated below, the motions to dismiss at issue here are granted in part and denied in part. Moreover, as appropriate, the plaintiffs shall amend their pleadings as required herein.

I.

FAILURE TO PLEAD FRAUD WITH PARTICULARITY
First, the defendants urge almost unanimously that the plaintiffs have failed to plead with particularity their federal and state securities fraud claims, their common law fraud claims, and their Racketeer Influenced and Corrupt Organizations claims (which are predicated upon mail, wire, and securities fraud), as required by Federal Rule 9(b). Many of the defendants, if not all, misapprehend the narrow command of Rule 9(b), which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," but that "[m]alice, intent, knowledge, or other condition of mind may be averred generally." Fed.R.Civ.P. 9(b). Rule 9(b) does not require detailed fact pleading of claims of fraud. See Garcia v. Bernabe, 289 F.2d 690, 692-93 (1st Cir.1961). See also Official Form 13; Fed.R.Civ.P. 84. See generally Nolan Brothers, Inc. v. United States for the Use of Fox Brothers Construction Co., 266 F.2d 143, 145-46 (10th Cir.1959) (Rule 9(b) "merely requires that the circumstances constituting fraud shall be pleaded with particularity." [emphasis added]). Rather, Rule 9(b) must be read in conjunction with the simplified system of "notice pleading" generally contemplated by the Federal Rules, see Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 102-103, 2 L.Ed.2d 80 (1957), and specifically codified in Rule 8, Fed.R.Civ.P. 8(a), (b), (e), (f). See Tomera v. Galt, 511 F.2d 504, 508 (7th Cir.1975); Felton v. Walston & Co., 508 F.2d 577, 581 (2d Cir.1974); In Re Home-Stake Production Co. Securities Litigation, 76 F.R.D. 337, 348-49 (N.D.Okl.1975); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298 at 406-407 & n. 66 (1969 & Supp.1982). Thus, the Court will not sustain an attack on a pleading of fraud unless absolutely necessary to protect the purposes underlying Rule 9(b)'s particularity requirement. See Massey-Ferguson, Inc. v. Bent Equipment Co., 283 F.2d 12, 15 (5th Cir.1960); 5 C. Wright & A. Miller, supra, § 1300 at 425. In the context of securities fraud cases, as here, there are three such purposes: to enable defendants to prepare meaningful responses, to preclude the use of a groundless *264 fraud claim as a pretext to discover a wrong, and to safeguard defendants from lightly made charges which might damage their reputations. See id. § 1296 at 399-400 & nn. 48-50.
When read in light of these considerations, the plaintiffs' allegations are clearly sufficient. Primarily, the sheer number of these suits, filed across the country over the span of at least two years, itself demonstrates that they are not mere pretexts instituted only for their settlement value. In addition, the complaints are specific enough to permit the defendants to frame their responsive pleadings; indeed, they have already answered. In sum, the plaintiffs' allegations not only give the defendants ample notice, but they also state with reasonable specificity the circumstances constituting the alleged fraud. The Federal Rules require no more from a pleading. See Walden v. Elrod, 72 F.R.D. 5, 14 (W.D.Okl.1976).

II.

LACK OF SUBJECT MATTER JURISDICTION
The defendants next challenge the existence of subject matter jurisdiction pursuant to Federal Rule 12(b)(1). It is, of course, a fundamental axiom of American constitutional law that federal courts are courts of limited jurisdiction. See U.S. Const. art. III, § 2. The party bringing an action before a federal court, therefore, has the burden of pleading the grounds upon which the court's jurisdiction depends. Fed.R.Civ.P. 8(a)(1). The plaintiffs here allege a number of jurisdictional grounds: Section 22 of the Securities Act of 1933 [hereinafter "Securities Act"], 15 U.S.C. § 77v(a); Section 27 of the Securities Exchange Act of 1934 [hereinafter "Exchange Act"], 15 U.S.C. § 78aa; the Racketeer Influenced and Corrupt Organizations Act [hereinafter "RICO"], 18 U.S.C. § 1964(c); 28 U.S.C. § 1331; and principles of pendent jurisdiction. Further, in those cases in which the FDIC is named as a defendant, the plaintiffs also allege jurisdiction based upon 12 U.S.C. § 1819 (fourth).
The defendants argue as follows: the plaintiffs have failed to allege fraud with particularity, so their federal securities fraud and RICO claims must be dismissed; therefore, there are no statutory bases of subject matter jurisdiction, and there is no pendent jurisdiction to support the state law claims. This argument suffers from at least two defects. One, the chain of logic breaks at its first link. As indicated above, the plaintiffs have pleaded fraud with requisite particularity, so their federal securities law and RICO claims are sufficient, both as independent grounds of subject matter jurisdiction and as the basis for pendent jurisdiction. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Two, the defendants' argument ignores those cases in which the FDIC is a party, thereby conferring jurisdiction under 12 U.S.C. § 1819 (fourth). See Federal Deposit Insurance Corp. v. Huntington Towers, Ltd., 443 F.Supp. 316, 318 (E.D.N.Y.1977). Cf. Federal Deposit Insurance Corp. v. Sumner Financial Corp., 602 F.2d 670, 683 (5th Cir.1979) (no federal subject matter jurisdiction in a suit brought against the FDIC as receiver of a State bank).

III.

FAILURE TO STATE A CLAIM
The defendants further contend, for a host of reasons, that the plaintiffs have failed to state a claim upon which relief can be granted under Federal Rule 12(b)(6). It is essential to note at the outset the law governing such motions. It is well established that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, supra, 355 U.S. at 45-46, 78 S.Ct. at 101-102. In the context of a motion to dismiss, the Court must construe the challenged pleading in the light most favorable to the plaintiff, must accept as *265 true all well-pleaded factual allegations and reasonable inferences therefrom, and must disregard all legal or unsupported conclusions. Mitchell v. King, 537 F.2d 385, 386 (10th Cir.1976). Further, the complaint should not be dismissed merely because the plaintiff's allegations do not support his stated legal theory, for the Court is obligated to determine whether the allegations support relief on any possible theory. See Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369, 1375 n. 5 (10th Cir. 1980) (citing 5 C. Wright & A. Miller, supra, § 1357).

A.

Securities Law Claims
In response to the plaintiffs' securities law claims, the defendants assert that the plaintiffs have not adequately alleged that the Longhorn limited partnership interests are "securities"; that they have failed to plead compliance with the applicable statutes of limitations; that they have not adequately alleged "seller" status under the Securities Act or "aider and abettor" or "control person" status under the Securities Act or the Exchange Act; and that there is no implied, private cause of action against "control persons" for a violation of Section 10(b) of the Exchange Act or Rule 10b-5 promulgated thereunder. Each assertion is analyzed in turn.

1.
First, the plaintiffs have adequately pleaded the existence of a "security." The Securities Act and the Exchange Act definitions of a "security" are "virtually identical." Tcherepnin v. Knight, 389 U.S. 332, 335-36, 88 S.Ct. 548, 552-53, 19 L.Ed.2d 564 (1967). Unless the context otherwise requires, a "security" is:
any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.
Securities Act § 2(1), 15 U.S.C. § 77b(1), amended by Act of Oct. 13, 1982, Pub.L. No. 97-303. Cf. Exchange Act § 3(a)(10), 15 U.S.C. § 78c(a)(10), amended by Act of Oct. 13, 1982, Pub.L. No. 97-303. The plaintiffs here allege that the interests they purchased in the various Longhorn limited partnerships are "securities." This alone is sufficient to withstand a motion to dismiss.
In opposition to the motions, at least some of the plaintiffs maintain that their limited partnership interests are "fractional undivided interest[s] in oil, gas or other mineral rights." Securities Act § 2(1), 15 U.S.C. § 77b(1). Memorandum in Opposition to Motions of 19 Defendants to Dismiss Plaintiffs' Complaints 6-7 (March 11, 1983). This may be true and at the pleading stage is accepted as true. See Mitchell v. King, supra, 537 F.2d at 386.
However, the position for which there is greater support in the case law is that the limited partnership interests are "investment contracts." Securities Act § 2(1), 15 U.S.C. § 77b(1); Exchange Act § 3(a)(10), 15 U.S.C. § 78c(a)(10). The Supreme Court, construing the Securities Act liberally in order to effect its remedial purpose, has defined an "investment contract" as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party ..." Securities *266 Exchange Commission v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S.Ct. 1100, 1102-03, 90 L.Ed. 1244 (1946). Accord Tcherepnin, supra, 389 U.S. at 335-36 & n. 9, 88 S.Ct. at 553 & n. 9 (adopting the Howey test in context of the Exchange Act). Form is disregarded over substance, and emphasis is placed on economic reality; hence, the definition "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." Howey, supra, 328 U.S. at 298-99, 66 S.Ct. at 1103. Applying Howey, a number of courts have ruled that assorted limited partnership interests are "investment contracts" and thus "securities." E.g., Goodman v. Epstein, 582 F.2d 388, 406-409 (7th Cir.1978); McGreghar Land Co. v. Meguiar, 521 F.2d 822, 824 (9th Cir.1975); Sharp v. Coopers and Lybrand, 457 F.Supp. 879, 889 (E.D.Pa.1978), aff'd in part and rev'd in part, 649 F.2d 175 (3d Cir.1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). See 1 A. Bromberg & L. Lowenfels, Securities Fraud and Commodities Fraud § 4.6(332) at 82.7 (1982); 1 Fed.Sec.L.Rep. (CCH) ¶ 1046 at 2062 (limited partnership real estate syndications). Finally, determining whether the Longhorn limited partnership interests are "investment contracts" is a question of fact, not a question of law to be determined on a motion to dismiss. E.g., Crowley v. Montgomery Ward and Co., 570 F.2d 875, 877 (10th Cir.1975).

2.
Second, the defendants contend that certain plaintiffs have failed to plead compliance with the relevant statutes of limitations. At least some of the plaintiffs concede the point, though only in part, and they pray for leave to amend. E.g., Memorandum in Opposition to Motions of 19 Defendants to Dismiss Plaintiffs' Complaints 17 (March 11, 1983). On the one hand, the Securities Act itself contains a statute of limitations:
No action shall be maintained to enforce any liability created under section 77k or 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l (2) of this title more than three years after the sale.
Section 13, 15 U.S.C. § 77m. The courts uniformly hold that a plaintiff must affirmatively plead compliance with Section 13, as it forms a substantive element of a Securities Act claim. Brick v. Dominion Mortgage & Realty Trust, 442 F.Supp. 283, 291 (W.D.N.Y.1977); Premier Industries Inc. v. Delaware Valley Financial Corp., 185 F.Supp. 694, 696 (E.D.Pa.1960); Osborne v. Mallory, 86 F.Supp. 869, 872-76 (S.D.N.Y. 1949). On the other hand, there is not a statute of limitations provision in the Exchange Act. Instead, relevant state statutes of limitations govern, de Haas v. Empire Petroleum Co., 435 F.2d 1223, 1225 (10th Cir.1970); Hooper v. Mountain States Securities Corp., 282 F.2d 195, 205 (5th Cir.1960), and they constitute affirmative defenses, not elements of an Exchange Act claim. See Fed.R.Civ.P. 8(c). See generally 5 C. Wright & A. Miller, supra, § 1226 at 161-62. Therefore, the plaintiffs who have not done so already shall amend their Securities Act claims to plead compliance with Section 13.

3.
Third, the defendants challenge the legal sufficiency of the plaintiffs' pleading of "seller" status under Section 12 of the Securities Act, 15 U.S.C. § 77l; "aider and abettor" status under Section 12 of the Securities Act, id., and under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, *267 17 C.F.R. § 240.10b-5 (1982) [hereinafter "Rule 10b-5"]; and "control person" status under Section 15 of the Securities Act, 15 U.S.C. § 77o, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Specifically, the defendants proffer two arguments: that the plaintiffs have not clearly alleged the status of each defendant (i.e., whether seller, aider and abettor, or control person) and that the plaintiffs have failed to allege sufficient facts in support of these various claims. Neither argument is persuasive.
Initially, although certain complaints are quite complex, such as D & G Enterprises, CIV-82-1415-E, and MOG Investors, CIV-82-2267-E, the defendants are sufficiently apprised of their alleged roles in this grand drama. This is accomplished by means of class-based allegations. For example, in D & G Enterprises, supra, the defendants are grouped into the Longhorn defendants, ¶¶ 6-22; the Penn Square defendants, ¶¶ 11, 23-29; the Penn Square Bank and First Penn Corporation outside directors, ¶¶ 30, 31; and the FDIC as receiver of Penn Square Bank and the Deposit Insurance National Bank, ¶¶ 32, 33. Id. ¶ 35. The substantive claims are then made against these classes of defendants. E.g., id. Count I, ¶¶ 54-57 (Section 12(1) of the Securities Act, 15 U.S.C. § 77l(1), brought against the Longhorn defendants). This practice serves the twin interests of clarity and of economy in pleading.
There is one exception, however. In Hanchey v. Longhorn Gas Programs, Inc., CIV-83-1033-E, the plaintiff omits the defendant Stifel, Nicolaus & Co., ¶ 9, from the Longhorn Defendants group, ¶¶ 2-6, 10, and from the Penn Square defendants group, ¶ 7. Therefore, it is not at all clear which, if any, of the claims are brought against Stifel, Nicolaus. Accordingly, the plaintiff shall amend his complaint to remedy this inadequacy, Fed.R. Civ.P. 15(a), or it will be dismissed as against Stifel, Nicolaus, Fed.R.Civ.P. 8(a)(2), 12(b)(6).
Secondly, the defendants' demand for greater specificity in the plaintiffs' allegations of seller, aider and abettor, and control person status is not well taken. The defendants misconstrue the special pleading requirement of Rule 9(b). Although it applies to the anti-fraud provisions of the securities laws, Tomera v. Galt, 511 F.2d 504, 508 (7th Cir.1975), it does not require specific pleading of every element of every securities law claim. See, e.g., Burkhart v. Allson Realty Trust, 363 F.Supp. 1286, 1289 (N.D.Ill.1973) (control person claim based on Section 15 of the Securities Act, 15 U.S.C. § 77o). Rather, as discussed above, Rule 9(b) only requires that the "circumstances constituting fraud" be specially pleaded. Section I, supra.
Moreover, the defendants confuse the burden of pleading with the burden of proof. Rule 8(a) merely requires a short, plain statement of a claim, Fed.R.Civ.P. 8(a), and on a motion to dismiss the factual allegations in support of a claim are accepted as true, Mitchell v. King, supra, 537 F.2d at 386. The cases on which the defendants rely are, for the most part, inapposite, as they address the ultimate burden of proof. E.g., Croy v. Campbell, 624 F.2d 709, 713 n. 5 (5th Cir.1980) (seller status under Section 12 of the Securities Act); Hill York Corp. v. American Int'l Franchises, 448 F.2d 680, 694-95 (5th Cir.1971) (control person status under Section 15 of the Securities Act). The defendants also rely on McFarland v. Memorex Inc., 493 F.Supp. 631 (N.D.Calif.1980), but it is distinguishable. In McFarland, the plaintiffs claimed nonregistration and securities fraud and sued Memorex, 24 of its officers and directors, its accountants, its securities underwriters, and 14 individuals and entitles who sold warrants to purchase a large block of Memorex stock to the underwriters. Id. at 634-35. The allegations in McFarland were based largely on information and belief, id. at 638-39, and flew in the face of common sense, id. at 649. The allegations at bar are manifestly different.

4.
Fourth, a number of defendants contend that there is no implied, private cause of action for a violation of Section 10(b) of the Exchange Act and Rule 10b-5 *268 as against "control persons" under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). In support of their contention, the defendants argue that the existence of express liability under Section 12(2) of the Securities Act precludes implied liability under Section 10(b) of the Exchange Act, relying on a decision of the District Court for the Eastern District of Missouri, Berger v. Bishop Investment Corp., 528 F.Supp. 346 (E.D.Mo.1981). If this argument ever had any vitality, it no longer does. Just this past Term the Supreme Court held that the existence of an express remedy under Section 11 of the Securities Act does not foreclose an implied remedy under Section 10(b) of the Exchange Act. Herman & MacLean v. Huddleston, ___ U.S. ___, ___-___, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Although Huddleston does not specifically address the interrelationship between Sections 12 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act, its holding is applicable by analogy, and its rationale is determinative.

B.

RICO
In addition to their Rule 9(b) challenge, which is denied in Section I, supra, the defendants attack the legal sufficiency of the plaintiffs' RICO claims. In effect, they argue that the plaintiffs' claims are outside the intended scope of RICO, because the plaintiffs have not alleged a link to organized crime, because the plaintiffs have not suffered a racketeering enterprise injury, and because none of the defendants have been convicted of a predicate crime under RICO. In general, the defendants read the statute far too narrowly. Each argument is considered and rejected seriatim.

1.
RICO grants a civil cause of action to "[a]ny person injured in his business or property by reason of a violation of Section 1962 ..." 18 U.S.C. § 1964(c). Section 1962 proscribes four classes of activity. Section 1962(a) prohibits any person from investing funds derived from a "pattern of racketeering activity or through collection of an unlawful debt" in an enterprise involved in or affecting interstate or foreign commerce; Section 1962(b) prohibits any person from acquiring or maintaining an interest in such an enterprise "through a pattern of racketeering activity or through collection of an unlawful debt"; and Section 1962(c) prohibits any person employed by or associated with such an enterprise from conducting its affairs "through a pattern of racketeering activity or collection of unlawful debt." Finally, Section 1962(d) prohibits any person from conspiring to violate the provisions of Sections 1962(a), (b), or (c).
Section 1961, in turn, defines "racketeering activity," "pattern of racketeering," and "unlawful debt." First, "racketeering activity" includes any act or threat involving any of eight different state law felonies or any of twenty-five separate federal offenses, including mail, wire, and securities fraud.[1] 18 U.S.C. § 1961(1). Second, a *269 "pattern of racketeering activity" merely requires at least two acts of "racketeering activity," one of which must occur after the effective date of the Act and the last of which must occur within ten years of the prior act (excluding any period of imprisonment). 18 U.S.C. § 1961(5). Third, an "unlawful debt" is defined as a debt which is incurred or contracted in or in connection with illegal gambling activity or which is wholly or partly unenforceable as usurious. 18 U.S.C. § 1961(6).[2]

2.
Defendants' first argument is that there is no allegation of any connection with "organized crime." However, RICO does not require any such connection. See Blakey & Gettings, Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts  Criminal and Civil Remedies, 53 Temp.L.Q. 1009, 1013-14 (1980); Tarlow, RICO Revisited, 17 Ga.L.Rev. 291, 305-306 (1983); Note, Civil RICO: The Temptation and Impropriety of Judicial Restriction, 95 Harv.L.Rev. 1101, 1106-1109 (1982). The Tenth Circuit has not so ruled, but there is a consensus among the Circuits that have considered the issue, both in a civil context, see CENCO, Inc. v. Seidman & Seidman, 686 F.2d 449, 457 (7th Cir.1982), cert. denied, ___ U.S. ___, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982); Bennett v. Berg, 685 F.2d 1053, 1063-64 (8th Cir.1982), reh'g en banc granted, 710 F.2d 1361 (1982), and in a criminal context, see United States v. Cauble, 706 F.2d 1322, 1330 & n. 7 (5th Cir.1983) (dictum); United States v. Aleman, 609 F.2d 298, 303-304 (7th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); United States v. Rubin, 559 F.2d 975, 991 n. 15 (5th Cir.1977), vacated and remanded on other grounds, 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978); United States v. Campanale, 518 F.2d 352, 363-64 (9th Cir. 1975), cert. denied sub nom. Matthews v. United States, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). Contra Waterman S.S. Corp. v. Avondale Shipyards, 527 F.Supp. 256 (E.D.La.1981); Adair v. Hunt Int'l Resources Corp., 526 F.Supp. 736 (N.D.Ill.1981); Barr v. WIU/TAS, Inc., 66 F.R.D. 109 (S.D.N.Y.1975).
The reasoning that underlies this conclusion is compelling. First and foremost, no such requirement appears in the statute, and it is not the role of the courts to supply it. Second, Congress explicitly refused to limit RICO to "organized crime" because such a restriction could create constitutional problems and would impose a virtually impossible burden of pleading and proof. See Note, Civil Rico, supra, 95 Harv.L. Rev. at 1107-1109.

3.
The defendants next argue that the plaintiffs lack standing to bring their private RICO claims, because they allege merely direct injuries, rather than competitive or commercial injuries. In support of their argument, the defendants rely on scattered district court authority, but it is neither binding nor persuasive. Indeed, the one circuit court which has confronted the question squarely has held that there is no "enterprise injury" requirement. Bennett v. Berg, supra, 685 F.2d 1053, 1058-59 (8th Cir.1982).
As with all issues of statutory construction, the Court's inquiry must begin with the statute itself. If the language of the statute is unambiguous, that language is *270 conclusive absent a "clearly expressed legislative intent to the contrary." Consumer Products Safety Commission v. Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). See generally 2A C. Sands, Sutherland on Statutory Construction § 46.01 (4th ed. 1973) (plain meaning rule). Section 1964(c) provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Section 1964(c) is not, by its own terms, limited to commercial or competitive injuries. Quite the contrary, it broadly provides a civil claim to "any person injured in his business or property" through a violation of Section 1962. 18 U.S.C. § 1964(c) (emphasis added).
The courts that have implied an "enterprise injury" requirement into Section 1964(c) have emphasized Congress' finding that organized crime interferes with free enterprise and the similarity between RICO's treble damage provision and similar provisions in the antitrust laws. E.g., Landmark Sav. & Loan v. Loeb Rhoades, Hornblower & Co., 527 F.Supp. 206 (E.D. Mich.1981). However, the Court cannot properly import antitrust law restrictions into RICO, for the two sets of laws are not in pari materia. They treat different subjects and serve different purposes. See Note, Civil RICO, supra, 95 Harv.L.Rev. at 1110-14. See generally 2A C. Sands, supra, §§ 51.01-51.03 (in pari materia rule). Indeed, to restrict civil RICO standing to those who have suffered some "enterprise injury" would in effect immunize certain racketeering activity from the reach of the Act, contrary to its liberal interpretation provision. See Hanna Mining Co. v. Noreen Energy Resources, [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,742 at 93,737 (N.D.Ohio 1982); Note, Civil RICO, supra, 95 Harv.L.Rev. at 1110-11.
Another facet of the "enterprise injury" argument is that Congress could not have intended cumulative remedies for simple fraud actions, so the courts should not allow them. This argument is unconvincing. Section 1964(c) of RICO plainly provides a remedy to a person injured by a violation of Section 1962, which may include a pattern of racketeering activity based on mail, wire, or securities fraud, 18 U.S.C. §§ 1961(1), (5), 1962. And when the law is clear, it is the court's duty to apply it. See Tennessee Valley Authority v. Hill, 437 U.S. 153, 194-95, 98 S.Ct. 2279, 2301-02, 57 L.Ed.2d 117 (1978) (per Burger, C.J.); United States v. Culbert, 435 U.S. 371, 379-80, 98 S.Ct. 1112, 1116-17, 55 L.Ed.2d 349 (1978). Furthermore, Congress knew when it was enacting RICO that it was supplementing longstanding state and common law remedies. See United States v. Turkette, 452 U.S. 576, 586-87, 101 S.Ct. 2524, 2530-31, 69 L.Ed.2d 246 (1981). Moreover, RICO does not just provide an extra, treble damages remedy for an injury that is already cognizable; rather, RICO provides a remedy to a person injured by a "pattern of racketeering activity" proscribed by Section 1962, which is separate and distinct from the constituent, predicate offenses comprising such a pattern. Cf. United States v. Cauble, 706 F.2d 1322, 1331 & n. 19 (5th Cir.1983) (criminal action).

4.
Finally, the defendants argue that the plaintiffs have not and cannot allege that the defendants have been convicted of the predicate mail, wire, and securities fraud offenses comprising the "pattern of racketeering activity" proscribed by Section 1962. This is a spurious argument. The defendants' reliance on Van Schiack v. Church of Scientology of California, Inc., 535 F.Supp. 1125 (D.Mass.1982) and Kleiner v. First National Bank of Atlanta, 526 F.Supp. 1019 (N.D.Ga.1981) is at best disingenuous. In neither case did the court reach the issue, and the Van Schiack court expressly noted the contrary authority. Van Schiack, supra, 535 F.Supp. at 1137-38 n. 12; Kleiner, supra, 526 F.Supp. at 1022 n. 2. Moreover, the courts that have addressed the issue have consistently held that there is no such requirement. See *271 USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 95 n. 1 (6th Cir.1982) (collecting and approving the district court cases).

C.

Breach of Fiduciary Duty
The plaintiffs in at least D & G Enterprises, CIV-82-1415-E, and MOG Investors, CIV-82-2267-E, allege that certain of the Penn Square and Longhorn defendants breached a fiduciary duty owed to the Longhorn limited partners, based on 54 Okla.Stat. §§ 150, 221 and State common law. These claims sweep too broadly; they are properly stated only against the general partners of the various Longhorn limited partnerships. Therefore, these claims must be dismissed in part.
The plaintiffs do have a legally sufficient fiduciary duty claim based on the Oklahoma Uniform Limited Partnership Act, 54 Okla.Stat. §§ 141-171. However, the only defendants owing such a duty are the general partners of the limited partnerships, so only they are potentially liable on this theory. The rights, powers, and liabilities of the general partners of a limited partnership are the same as those of the partners in a general partnership. 54 Okla. Stat. § 150(a). In particular, a partner is accountable to the partnership as a fiduciary. The Oklahoma Uniform Partnership Act provides: "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." 54 Okla.Stat. § 221(1).
However, this analysis does not end here, for the Court is obligated to determine whether the plaintiffs' fiduciary duty claims are properly stated on any theory against the defendants who are not general partners. See Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369, 1375 n. 5 (10th Cir.1980) (citing 5 C. Wright & A. Miller, supra, § 1357). The only other conceivable basis for the plaintiffs' claims is a joint venture theory, but the pleadings do not state such a claim.
The Oklahoma Supreme Court has described a joint venture as "a relationship analagous to, but not identical with, a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit." Martin v. Chapel, Wilkinson, Riggs & Abney, 637 P.2d 81, 85 (Okl.1982) (per Opala, J.) (footnote omitted). The law of partnership and of agency, therefore, governs the rights and liabilities of co-adventurers and third parties as well. Id. at 85-86 (footnote omitted); Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829, 838 (1937) (per curiam). The essential characteristics of a joint venture are a joint interest in property, an agreement to share profits and losses, and conduct showing cooperation in the project. Martin, supra, 637 P.2d at 85.
Based on the pleadings at bar, the Court cannot conclude that there was a joint venture among the plaintiffs and the Longhorn and Penn Square defendants, giving rise to an actionable fiduciary duty. First, there appears to have been no joint interest in property. Second, there appears to have been no agreement to share jointly profits and losses; although the parties may have anticipated or realized profits severally, that is not sufficient. See Commercial Lumber, supra, 181 Okl. 122, 72 P.2d at 830. Additionally, on this point, the Oklahoma Supreme Court has specifically held that an agreement to finance a scheme does not make the lender a joint adventurer with the borrower. Feagin v. Champion, 195 Okl. 116, 155 P.2d 518, 520 (1944) (per curiam). Thus, the Penn Square defendants cannot be considered joint adventurers with the plaintiffs and the Longhorn defendants merely by financing the Longhorn limited partnerships. Finally, there may have been cooperation among all the parties, but this alone does not create a joint venture. Martin, supra, 637 P.2d at 85 & n. 9.
*272 In response to the motion to dismiss of Carl W. Swan [hereinafter "Swan"] on this basis in Hanchey, CIV-83-1033-E, the plaintiff cites Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), and Fipps v. Stidham, 174 Okl. 473, 50 P.2d 680 (1935), for the proposition that Swan owed a fiduciary duty to the plaintiff even though Swan was not a general partner in the relevant Longhorn limited partnership. Memorandum in Opposition to Defendant Swan's Motion to Dismiss 2 (June 30, 1983). This reliance is misplaced. First, Affiliated Ute involves "market makers" whose activity engendered a duty to disclose,[3] the breach of which violated Rule 10b-5(a) and (c), supra. Affiliated Ute, supra, 406 U.S. at 152-53, 92 S.Ct. at 1471-72. The plaintiffs here do not claim a breach of the "disclose or abstain" rule; instead, they claim a breach of a fiduciary duty by unfair and self dealing practices. E.g., D & G Enterprises, CIV-82-1415-E, ¶ 111. The plaintiffs cannot bootstrap a general fiduciary duty from the limited duty imposed on "market makers" by Rule 10b-5. Second, in Fipps there was a clear agency relationship between the bank as agent and the principal-seller, and it was out of this relationship that the fiduciary relationship arose. Fipps, supra, 50 P.2d at 681-83. However, no principal-agent relation appears in the pleadings here among the plaintiffs and all the Longhorn and Penn Square defendants.

D.

Common Law Negligence
Furthermore, the plaintiffs in at least D & G Enterprises and MOG Investors claim that the outside directors of Penn Square Bank and First Penn Corporation negligently breached their duty to oversee Penn Square Bank's operations and that but for their negligence the conspiracy to defraud the plaintiffs could not have been carried out. E.g., D & G Enterprises, supra, ¶¶ 112-115. These negligence claims must be dismissed, for they are assets of the failed Bank and its depositors and creditors generally, and not of the plaintiff or any other singly or uniquely.
As a general rule, wrongs committed by a bank's officers or directors that injure all depositors and creditors alike create a liability which is an asset of the bank itself and for which only the bank or its receiver may recover. See Adato v. Kagan, 599 F.2d 1111, 1117 (2d Cir.1979); Michelsen v. Penney, 10 F.Supp. 537, 539 (S.D.N.Y.1934); 1 Michie, Banks and Banking, §§ 68, 69, 98, 101, 190 (1973 & Supp.1982). However, an individual shareholder or depositor may sue derivatively, on behalf of the bank, for wrongs against it, but only after having made an unsuccessful demand on the bank or its receiver to bring suit. See Landy v. Federal Deposit Insurance Corp., 486 F.2d 139, 146-52 (3d Cir.1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); Michelsen, supra, 10 F.Supp. at 539; 1 Michie, supra, §§ 68, 69. In contrast, individual depositors or creditors may sue directly, in their own right, if they suffer a wrong that is uniquely theirs and not common to all. See Adato, supra, 599 F.2d at 1117; Kimmich v. Potter, 112 F.2d 135, 136-37 (2d Cir.1940) (L. Hand, J.), cert. denied, 311 U.S. 653, 61 S.Ct. 47, 85 L.Ed. 418 (1940), reh. denied, 313 U.S. 597, 61 S.Ct. 832, 85 L.Ed. 1550 (1941); 1 Michie, supra, §§ 68, 69. See also Harmsen v. Smith, 542 F.2d 496, 499-501 (9th Cir.1976) (shareholders who suffered separate, individual damages by relying on false bank statements may sue directly); Imperial Supply Co. v. Northern Ohio Bank, 430 F.Supp. 339, 364-66 (N.D.Ohio 1976) (same).
This is in accord with well-settled principles of corporate law. Individual stockholders cannot directly maintain an action to redress wrongs done to their corporation. See, e.g., Barnett v. Bodley, 348 P.2d 502, 505 (Okl.1959) (and cases cited *273 therein); see also 9 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 4231, 4469 (rev. perm. ed. 1976 & Supp. 1982), but they may sue derivatively, on behalf of the corporation, if it refuses to institute an action itself, see, e.g., Barnett, supra, 348 P.2d at 505; see also Fed.R. Civ.P. 23.1. However, individual stockholders may sue directly, in their own right, for wrongs done to them, separate and distinct from the corporation. See id. § 4264.
The plaintiffs here do not allege that they were injured uniquely by the board of directors' negligence. Rather, they allege that the board had a duty to oversee Penn Square Bank's operations, that it breached that duty by ignoring repeated warnings by the Comptroller of the Currency and by failing to implement remedial measures to avert the Bank's ultimate failure, and that but for this breach the conspiracy to defraud the plaintiffs could not have been executed. E.g., D & G Enterprises, CIV-82-1415-E, ¶¶ 112-115. The first two allegations are, in effect, that the board was negligent and that its negligence caused the bank to fail. Id. ¶¶ 113, 114. Those allegations are patently insufficient to state a direct claim for relief. The wrongs alleged support a claim, but that claim is an asset of the failed Bank and its receiver, not of the plaintiffs here. The last allegation, id. ¶ 115, does not save the claim. Each one of the Bank's creditors and uninsured depositors could also claim that but for the board's negligence they would not have suffered their respective losses.

E.
Finally, the defendant Swan attacks the sufficiency of the complaints in CGZ Partnership v. Longhorn Gas Programs, Inc., CIV-82-2294-E, and Roberts v. Longhorn Gas Co., CIV-82-2295-E, on two additional grounds. He argues that rescission is unavailable because there was no privity between the plaintiff-investors and him and because the plaintiffs have unclean hands. Neither ground is persuasive.
First, although strict privity is no longer crucial in an action for damages under Section 12 of the Securities Act or under Section 10(b) of the Exchange Act, it is still required in an action for rescission. See 3 A. Bromberg & L. Lowenfels, Securities Fraud & Commodities Fraud § 8.5(513) at 208.3 (1982). However, the plaintiffs in CGZ Partnership allege that Swan, among others, did in fact sell them the disputed Longhorn limited partnership interests, id. ¶ 11, so rescission is available against him. In Roberts, on the other hand, rescission is not available against Swan, because the plaintiff alleges that she bought her interest from J.D. Allen alone. Id. ¶ 13. Nevertheless, she does properly seek damages as well. Id. ¶ 38. Consequently, both actions state a claim against Swan.
Second, Swan contends that the plaintiffs cannot rescind their purchases because they have unclean hands. His contention, more fully, is this: the plaintiffs obtained substantial tax benefits by claiming that their entire investments, including the amounts of their letters of credit, were "at risk" under Section 465 of the Internal Revenue Code; however, the plaintiffs were "assured" that those letters would not be called; therefore, they have acted inequitably, and perhaps illegally, so equity should not come to their aid. This contention fails for at least two reasons. Fundamentally, by construing the pleadings in the light most favorable to himself, he ignores the settled rule that on a motion to dismiss a pleading is to be construed in the light most favorable to the plaintiff. Mitchell v. King, supra, 537 F.2d at 386. Additionally, the unclean hands defense is not absolute and unequivocal, but is a matter of judicial discretion to be exercised as the facts indicate. See Houston Oilers, Inc. v. Neely, 361 F.2d 36, 42 (10th Cir. 1966), cert. denied, 385 U.S. 840, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966), reh. denied, 385 U.S. 942 (1966). Thus, it would be premature to dismiss the plaintiffs' actions on this basis on the pleadings alone. See generally 5 C. Wright & A. Miller, supra, § 1226.
*274 With regard to Roberts, though, Swan does properly object to the sufficiency of the complaint. Clearly, by federal standards, Roberts is no model of pleading.[4] There is neither a statement of the grounds upon which the court's jurisdiction depends, Fed.R.Civ.P. 8(a)(1), nor a statement of the law upon which the plaintiff bases her claim, Fed.R.Civ.P. 8(a)(2), although there is a statement of the facts giving rise to her cause of action, CIV-82-2295-E ¶¶ 9-35. Under the circumstances, it would be unjust to dismiss her action altogether, so she may amend her complaint. Fed.R.Civ.P. 15(a).
Accordingly,
IT IS THEREFORE ORDERED that the defendants' motions to dismiss be and hereby are granted in part and denied in part. Specifically, the motions are granted as to the plaintiffs' negligence claims against the Penn Square Bank and First Penn Corporation outside directors and as to the plaintiffs' fiduciary duty claims, but only insofar as they are brought against defendants who are not general partners of the various Longhorn limited partnerships; otherwise, the motions are denied.
HOWEVER, IT IS FURTHER ORDERED that the plaintiffs who have not yet done so shall amend their pleadings within twenty (20) days hereof in the following respects: those plaintiffs bringing claims under the Securities Act shall plead compliance with Section 13, 15 U.S.C. § 77m; the plaintiff in Hanchey, CIV-83-1033-E, shall clearly plead which claims are brought against the defendant Stifel, Nicolaus & Company; those plaintiffs bringing fiduciary duty claims shall specify the defendant-general partners of the Longhorn limited partnerships against whom their claims are brought; and the plaintiff in Roberts, CIV-82-2295-E, shall plead the law on which she bases her claims.
The Clerk of the Court is instructed to mail copies hereof to liaison counsel.
NOTES
[*] Nos. CIV-82-1415-E, CIV-82-1528-E, CIV-82-1529-E, CIV-82-1575-E, CIV-82-1679-E, CIV-82-1681-E, CIV-82-1898-E, CIV-82-2259-E to CIV-82-2262-E, CIV-82-2265-E to CIV-82-2267-E, CIV-82-2269-E to CIV-82-2303-E, CIV-83-247-E to CIV-83-249-E, CIV-83-251-E to CIV-83-256-E, CIV-83-272-E to CIV-83-277-E, CIV-83-373-E and CIV-83-1033-E.
[1] Section 1961(1) defines "racketeering activity" as:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1084 (relating to the transaction of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2341-2346 (relating to trafficking in contraband cigarettes), sections 2421-24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States.
18 U.S.C. § 1961(1).
[2] The "unlawful debt" provision is not at issue here. Instead, the plaintiffs allege that the defendants engaged in a "pattern of racketeering activity."
[3] For a general discussion of "market making," see Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1168-73 (2d Cir.1970).
[4] In fairness, however, Roberts was originally brought in New York State court and then removed to the United States District Court for the Southern District of New York prior to being transferred to this Court by the Judicial Panel on Multidistrict Litigation. Perhaps this is a standard pleading under New York State practice.